Chappell v. Spencer.

---

## CHAPPELL vs. SPENCER and others.

Where the payee of a note, before its maturity, transferred it to another, and for the purpose of giving his own personal security to the purchaser, upon the note, and without any fraudulent intent, wrote his own name under the names of the makers, adding thereto the word "security;" *Held* that this was a material *alteration*, which vitiated the instrument.

APPEAL from a judgment entered at a special term. The action was brought against the defendants Robert Howie, Wellington Spencer and John Spencer, as the makers of a promissory note. The complaint described the note as having been made by the defendants and one William A. Murray. The answer was a general denial. The cause was referred to a referee, who found the following facts: That about the middle of the month of July, 1854, the defendants made a joint and several promissory note for $215, payable with interest on the 1st day of November, then next, to William A. Murray, or bearer, and delivered the same to said Murray in the due course of bus-

Chappell v. Spencer.

iness; that when the said note was so delivered it was signed by the defendants in the following order and manner.

"WELLINGTON SPENCER.

JOHN SPENCER, surety.

ROBERT HOWIE."

That afterward, and before the said note became due, Murray, in due course of business, transferred said note to one R. J. Hodges, and upon such transfer, and without any fraudulent intent, but for the purpose of adding his own personal security to said note, and in pursuance of an agreement to that effect, made between him and Hodges, Murray signed his own name to the note, under the names of the defendants, adding to it the word "surety." Hodges afterwards transferred the note to the plaintiff. That the interest on said note, to the date of the report, was $26.80, making the whole amount due thereon $241.80. The referee's conclusion of law, from the above facts, was that the plaintiff was entitled to judgment against the defendants for $241.80. And judgment was accordingly entered for that sum, and the defendants appealed.

*James Wood, jun.*, for the appellants.

*G. F. Danforth*, for the plaintiff.

*By the Court*, E. DARWIN SMITH, J. In *Pigot's case*, (11 *Coke's Rep.* 26,) it was resolved that when any deed is altered in a point material, by the plaintiff himself, or a stranger, without the privity of the obligor, be it by interlineation, addition, erasing or by drawing a pen through a line or through the midst of a material word, the deed thereby becomes void. The court of king's bench, in *Master* v. *Miller*, (4 *T. R.* 320,) applied this rule, as thus stated, to a bill of exchange, and declared it applicable to all written instruments. Lord Kenyon says of the *Pigot case*, that it establishes the principle that all written instruments which are erased or altered shall be void. This case was affirmed in the exchequer, in 5 *T. R.* 367, and has ever since been followed by the English courts. In this state

the same doctrine was asserted and adopted by the court for the correction of errors, in the case of *Woodworth*, v. *The Bank of America*, (19 *John.* 391,) in which an indorser was held discharged by an alteration made after his indorsement, but before the inception of the note, by an addition, in a separate memorandum, fixing a place of payment. And the rule of *Pigot's case*, as thus affirmed in the case of *Master* v. *Miller*, is recognized as the rule of the common law in all the states of the Union where the common law prevails. Some diversity of opinion exists in respect to the question how far the rule should be applied to executed contracts, to deeds when the title has passed, and the like cases. The rule is pretty generally repudiated as to such cases, and when the alteration is by a stranger. (8 *Cowen*, 72.) But there seems to be no diversity of opinion, so far as I have been able to discover from the reports of the various state courts, in applying the rule to all executory contracts, subject to one single qualification hereafter mentioned. The difficulty is not with the principle, but with its application. The rule is universally applied to all *material alterations* of deeds, bonds, bills of exchange or other written instruments made by the *holder* without the consent of the party to be bound or affected thereby, when the same are presented, or sought to be used as evidence for the enforcement of an unexecuted obligation or contract. In 11 *Mees. & Wels.* 778, *Davison* v. *Cooper*, (13 *id.* 343, *same case affirmed in error*,) Lord Denman, in giving the opinion of the court, reasserts the rule as laid down in *Pigot's case*, and says of it, "It is highly important, for preserving the purity of legal instruments, that the principle should be borne in mind and the rule adhered to. To say that *Pigot's case* has been overruled, is a mistake. On the contrary it has been extended; the authorities establishing, as common sense requires, that the alteration of an unsealed paper will vitiate it." (7 *Serg. & Rawle*, 508. 5 *Lit.* 205. 3 *Har. & J.* 159. 3 *Yates*, 391. 2 *N. Hamp. Rep.* 543. 2 *Watts & Serg.* 438. 22 *Wend.* 393. 24 *id.* 374. 6 *Mass. Rep.* 519.)

The rule in this state, and in most states, is that the question

whether the alteration is *material* is one of *law*, for the court. (7 *Barb.* 564. 5 *Greenleaf*, 200. 4 *How. Miss. Rep.* 414.) And if the alteration palpably appears on the face of the instrument, the burden of proof is upon the party setting it up, to explain the alteration. (2 *Wend.* 535. 22 *id.* 388. 3 *Barb.* 378.) In regard to what is *material* in such cases, in *Chitty on Bills*, the small work by Joseph Chitty, jun., at page 100, it is said, "The alteration of a bill, note or check, in regard to the *date* or *time* of payment, the *place* where it is to be paid, or the *parties* to make the payment, as by adding another drawer or maker to a bill or note as an after-thought, *after it was completed*, is material, and will discharge the parties from responsibility ; so with an alteration which varies the *nature* of the liability of the parties, as the making a joint note joint and several, or the addition of words rendering the instrument negotiable." The author means, of course, alteration made without the consent of the parties to be affected, for no party can take advantage of an alteration made with his consent.

As authority for the statement that the adding another drawer or maker to a bill or note is a material alteration, Mr. Chitty refers to two cases, one in *Holt's N. P.* 474, *Clark* v. *Blackstock*, and the other cited as *Ex parte White*, (2 *D. & Ch.* 334.) This last case I have been unable to find. The case in *Holt* was where the defendant signed a simple promissory note as a surety after it had been executed and delivered, with the assent of the maker. It was held by the judge at *nisi prius*, that such addition made the note a *new contract*, and that as such it required a new stamp, under the stamp act; that it became a *new bill*. This would not be so if the alteration was immaterial, or made to complete the instrument. (3 *Esp.* 246, *and* 10 *East*, 469.) In 5 *Monroe*, 25, *Bank of Limestone* v. *Phinney*, where, after the making and delivery of a joint and several promissory note by two, a third person signed it and his name was inserted in a blank left in the body for that purpose, it was held by the court of appeals of Kentucky that it was a material alteration, and that the note was void.

In *Pulliam* v. *Withers*, (8 *Dana*, 98,) where an additional name was put to a promissory note after it was complete, and had become operative, it was held that it avoided the note ; but there being some proof of the assent of the prior parties, the question was submitted to the jury whether the addition was made with their consent. In *Gardiner* v. *Walsh*, (32 *Eng. Law & Eq. Rep.* 162,) the question was very carefully considered. A promissory note was made by two, and after its delivery to the payee a second surety was added to it without the assent of the prior parties. The case was tried before the chief justice, at the circuit, who instructed the jury that if they believed from the evidence that Clark (the third party or last signer) signed the note *after it was perfect*, at the request of the plaintiff, and without the consent and privity of the other defendants, they should find for the defendants, and the jury so found. A rule nisi was granted, on argument, for a new trial, for the misdirection of the judge. After argument, the decision of the judge was affirmed ; Lord Campbell, Ch. J., giving the opinion, in which he says that they were all of the opinion that the rule could not be supported, on the ground " that the signing the note by Mr. Clark did not amount to an alteration of the note and of the liability of the defendant in a material point." If, after the note was perfect, according to the intention of the parties, as the joint and several note of the defendant and Elizabeth Benton, and after it had been completely issued and negotiated, the plaintiff, without the consent of the defendant, had caused it to be signed by Alice Clark as a joint and several maker, along with the defendant and Elizabeth Benton, according to principle and authority, he is discharged from his liability upon it." The learned judge further says : " We conceive that he is discharged from his liability if the altered instrument would operate differently from the original instrument, whether the alteration be or be not to his prejudice." This decision seems to be precisely in point with the present case. Opposed to these cases is one in 9 *Alabama Rep.* 513, (*Montgomery R. R.* v. *Hurst.*) This was a case where, after the making of the note in question, it was signed by two sureties

for the benefit of the payee. The court held that it did not invalidate the note, but admitted *that the identity of the instrument was destroyed by the addition.* There is also a case of the same effect in 8 *Adol. & El.* 136, (*Catton* v. *Simpson.*) This latter case was not much considered, and the opinion is embraced in a few words, and is expressly repudiated and reversed by the foregoing decision of *Gardiner* v. *Walsh.*

Concurring with the foregoing cases in respect to promissory notes are the following, in respect to *bonds.* In *O'Neil* v. *Long,* (4 *Cranch,* 69,) a new signature to a bail bond was made after its execution and it was held void. In *Harper* v. *The State,* (7 *Black.* 61,) a bond was altered by adding to it two obligors, and for that reason it was held void. In *Speake* v. *United States,* (9 *Cranch,* 28,) one name to a bond was erased and another substituted in its place, by consent of parties. Judge Story impliedly recognizes the same rule. He says, " It is clear, at common law, that an alteration or addition in a deed, as by adding a new obligor, or an erasure by striking out an old obligor, *if done with the consent and concurrence* of all the parties to the deed, does not avoid it." In these cases, or some of them, the name of the new obligor was inserted in the bond, but this was not material or essential to their liability. (4 *McCord,* 303. 7 *Cowen,* 484. *Smith* v *Crooker,* 5 *Mass. Rep.* 538.) The common law rule as asserted generally im the English and American cases in relation to deeds, bonds or sealed instruments, is tested by the inquiry whether the defendant has executed a deed which under a plea of *non est factum* can fairly be held to be in legal effect and substance as stated in the declaration. (9 *Cranch,* 28.) In relation to instruments not under seal, the rule in like manner relates to the *identity and integrity of the instrument.* The question is as said by Lord Kenyon in *Master* v. *Miller,* " Whether or not the defendant promised in manner and form stated in the declaration." (7 *Serg. & Rawle,* 505. 19 *John.* 391. 22 *Wend.* 392.) Such is the basis of the rule in every state where it has been asserted, except in the foregoing case in Alabama, and one or two cases in Massachusetts and New Hampshire,

where, as in 3 *Metcalf*, 103, the qualification has been super-added whether the alteration was fraudulently made or not. This last inquiry never has been made in the application of the rule, in the English cases, or in this state. This case in Alabama conflicts in principle with the cases in our own courts, where the rule has been asserted. (19 *John.* 391. 24 *Wend.* 376. 8 *Cowen*, 72. 3 *Barb.* 376.) The alteration is as *material* as the alteration in either of the foregoing cases. The relative rights and liabilities of the parties are thereby varied. (1 *Gil-man*, 490.) Applying the rule above suggested in respect to sealed instruments, certainly the plaintiff could not recover on the note, if it were sealed, under a plea of *non est factum*. It would not be the deed of the defendant. It is not in the shape it was in when signed by them. It is not their contract in that shape. Applying the rule also stated or suggested by Lord Kenyon, in the case of *Master* v. *Miller*, to it as a promissory note, the plaintiff could not recover upon it under *non assumpsit*. The complaint declares upon it as a note made by the defendants and John A. Murray, and payable to bearer. The actual note was made payable to John A. Murray or bearer, and was signed by the defendants alone. Here is a substantial misdescription of the instrument as signed by the defendants. The defendants say, in effect, that in manner and form stated they never made such a note, and the answer is true. There is a failure to prove the complaint in its entire scope and meaning, within section 171 of the code. The case is not one of variance under section 170. The weight of authority upon this question, in England and in this country, is certainly against a recovery by the plaintiff in this case, on the ground that the addition of another maker is a material alteration of the note. The judgment should be reversed and a new trial ordered. Possibly the plaintiff may prove that the defendants consented to the alteration in question, and if so the defendant would be estopped from making the defense.

Judgment reversed and new trial granted.

[Monroe General Term, March 2, 1857.  *T. R. Strong*, *Welles* and *Smith*, Justices.]