Burton *v.* Baker.

---

## WILLIAM BURTON *vs.* HIRAM N. BAKER.

B. made a note for $500, payable to G. or bearer. The note was made without consideration, for the accommodation of G. and to enable him to raise money, and was delivered by G. to the defendant, to be used to raise money for G. The note was afterwards signed by G. also, without the knowledge or consent of B. The defendant then indorsed upon the back of the note, a guaranty of the payment thereof, and sold the note to Burton, the plaintiff's assignor, for $425. *Held* that if the note was a valid note in the hands of G., as against B. when originally delivered to G., the transaction was not usurious, and the defendant was liable upon the guaranty, although G. signed the note without the knowledge or consent of B. at the same time the guaranty was signed, and the money advanced to G. by Burton.

The plaintiff was accordingly adjudged to be entitled to recover of the defendant, upon his guaranty, the amount actually advanced by Burton, upon the purchase of the note, with interest.

MOTION for a new trial, upon a bill of exceptions. The complaint contained four causes of action. The first stated that one David Babcock, on the 9th of February, 1855, made, executed and delivered to Hawley J. Goodwin, his note, of which the following is a copy:

"*Utica, Feb.* 9, 1855.

$500.   One year from date, I promise to pay Hawley J. Goodwin, or bearer, five hundred dollars, with interest, value received, payable at the Bank of Utica.

DAVID BABCOCK."

That afterwards, and on the 15th of February, 1855, in consideration that one David Burton would purchase the note of the defendant, who was the owner and holder thereof, and pay therefor $425, the defendant guarantied the payment of the note as follows: .

"For value received, I guaranty the payment of within this note.                              H. N. BAKER."

That the defendant delivered the note and guaranty to said David Burton, who paid the defendant therefor $425. The second count was for $425, money had and received by the defendant, of and to the use of David Burton. The third count alleged that on the 15th of February, 1855, the defendant was the holder of the note described in the first cause of action; that he assigned the note to David Burton, who paid him therefor $425; that said David supposed the note to be valid, whereas Babcock, the maker, had executed and delivered it to Hawley J. Goodwin, as an accommodation note, and for the purpose of raising money, and Goodwin had delivered it to the defendant for the use of him, Goodwin, and to enable the defendant to raise money thereon for him, Goodwin; all of which was unknown to Burton. By reason whereof the note became and was worthless; that the note had been tendered to the defendant, and the money advanced demanded. The fourth cause of action alleged that on the 15th of February, 1855, the defendant was the holder of the note above described, and that in consideration that David Burton would

Burton *v.* Baker.

and did purchase the note from the defendant, and pay him therefor $425, the defendant agreed to guaranty its payment, and that it was made on a good consideration as between Babcock and Goodwin, and was valid, and that the defendant had good title thereto; that the note had theretofore had a legal inception, and would be collectible for its full amount in the hands of Burton; whereas, in truth and in fact, the note was made by Babcock, without consideration, for the accommodation of Goodwin, and to enable him to raise money, and was delivered by the latter to the defendant to be used to raise money for Goodwin; by means whereof the note became and was worthless. An assignment of these causes of action from David Burton to the plaintiff was alleged. The answer contained five separate defenses. The first was a denial of the complaint. The second, third and fourth stated that the note had no legal inception until it was discounted by David Burton, and that it was signed by Goodwin and guarantied by the defendant on a usurious agreement. The fifth answer alleged that the note was made by Babcock as his individual note; and that afterwards, without his knowledge or consent, it was changed in a material part, to wit, by being signed by Goodwin, and being made the joint and several note of Babcock and Goodwin. The action was tried in December, 1856, at the Herkimer circuit. The plaintiff read in evidence a note in the terms above set out, signed by Babcock and H. J. Goodwin; on the back of which was a guaranty of payment, signed by the defendant. He then proved the interest on $425 from February, 1855, to be $24.76, and rested. The counsel for the defendant moved the court to nonsuit the plaintiff on these grounds: 1. That the proof did not establish the cause of action stated in the complaint. That the proof established an entirely different cause of action from that stated in the complaint. That the note proved was an entirely different one from that mentioned in the complaint. 2. That the signing of this note by Goodwin after it was made and issued by Babcock, without the knowledge or consent of the latter, destroyed

Babcock's liability and made it the sole note of Goodwin. 3. That on the facts stated in the complaint and the proofs, the note and guaranty was usurious.   4. That on the complaint and proofs the defendant was not liable.   The motion was denied, and the counsel for the defendant excepted.   The defendant then introduced testimony to sustain the defenses set up in his answer.   At the close of the testimony his counsel insisted, and asked the court to rule and decide, that the plaintiff was not entitled to recover, and that the complaint should be dismissed, or a verdict ordered in favor of the defendant, on the following grounds :   1. That the transaction was usurious, because in legal effect it was a loan of $425 to Goodwin, upon and for his note for $500 and interest guarantied by the defendant; that assuming that the note, as made by Babcock, was completely issued when signed by him and delivered to Goodwin, the signing of it by the latter, without the knowlege or consent of Babcock, discharged him, and made it the individual note of Goodwin.   2. That if Goodwin was authorized by Babcock to sign the note as a maker, then it was not a complete and valid note in the hands of Goodwin until so signed, and had no legal inception until it was signed by Goodwin, and the transaction with and transfer of it to Burton was usurious.   3. That the promise made by Goodwin as a signer of the note, and which was guarantied by the defendant, was usurious, and that the plaintiff could not recover, whether the note was originally a valid note in the hands of Goodwin or not.   4. That upon the complaint and evidence, the note and guaranty in the hands of David Burton were and each was usurious.   5. That upon the case made by the pleadings and evidence, the plaintiff was not entitled to recover.   6. That even if the note was a valid note, in the hands of Goodwin, as against Babcock, the transaction with Burton was usurious as against Goodwin and the defendant. 7. That upon the pleadings and evidence, the note was not a valid note in the hands of Goodwin, as against Babcock, and that this was not a case to be submitted to the jury on this

question. 8. That upon the case made, the defendant was entitled to have the complaint dismissed, or a verdict ordered in his favor. The court overruled these requests and objections of the defendant's counsel, and refused to dismiss the complaint or order a verdict in favor of the defendant. The court charged the jury, among other things, that if the note in suit was made by Babcock, and delivered by him in good faith to Goodwin, even in exchange for his note with the indorsements on it, it would be a valid note in his hands, and the sale of it by him for less than par would not render it usurious. To which ruling and charge the defendant's counsel excepted. That if the note was delivered to Goodwin to enable him to raise money upon it, with the understanding that he was to take care of it, and the other note was delivered to Babcock, not absolutely in exchange, but as a security against a failure to take care of it, it would not in that case be a valid note in the hands of Goodwin, and a sale of it by him at a discount of over seven per cent would render it usurious and void. That if the note was valid in the hands of Goodwin, as against Babcock, and he sold the same to Burton absolutely, it would not be rendered usurious as to the defendant, although it was signed by Goodwin, and guarantied by the defendant at the time of the sale, and as a condition of such sale. To which ruling and charge the defendant's counsel excepted. But that if the design of Burton was to loan the money to Goodwin, although the payment was to be secured by the note of Babcock and himself guarantied by Baker, it would be usurious, although the note might have been valid in the hands of Goodwin, as against Babcock. The court further ruled and decided that if the note in suit was a valid note in the hands of Goodwin, as against Babcock, when originally delivered to the former, then the transaction was not usurious, and the defendant was liable upon the guaranty, although Goodwin signed the note without the knowledge or consent of Babcock, at the same time the guaranty was signed, and the money advanced to Goodwin by Burton. To this ruling and decision the coun-

sel for the defendant excepted. The jury found a verdict in favor of the plaintiff for $449.76. The court ordered the bill of exceptions to be heard, in the first instance, at a general term.

*F. Kernan,* for the defendant. I. The court erred in refusing to nonsuit the plaintiff. There was no proof to sustain the 2d, 3d or 4th causes of action; and the evidence was of an entirely different cause of action than the one stated in the first count. This was upon a guaranty by the defendant of the payment of a note made by Babcock. The guaranty proved was of a note made by Babcock and Goodwin. The cause of action proved was entirely different, in its scope, meaning and legal effect from that stated.

II. If the note was made by Babcock, without consideration, for the accommodation of Goodwin, and had no legal validity in the hands of the latter, as is alleged in the 3d and 4th causes of action in the complaint, and as is also stated in the answer, then the transaction was usurious, and a verdict should have been ordered for the defendant. (1 *Kernan,* 368. See also *Cram* v. *Hendricks,* 7 *Wend.* 569–572, *per Suther-land, J.*)

III. But assuming that *the note,* executed by Babcock to Goodwin, was upon a good consideration, and originally valid in the hands of the latter, the transaction of the 7th of March, 1855, was usurious; and the court should have directed a verdict in favor of the defendant. (1.) In this view of the case, the note, as made by Babcock and delivered to Goodwin, was a complete and perfect instrument. Any alteration of its terms, or change of its legal effect, without the consent of Babcock, rendered it void as to him. After such alteration or change, it was no more his note than a blank piece of paper. It matters not whether the alteration or change was to his benefit or injury. A note for $200, changed to one for $100, becomes void. (*Chitty on Bills,* 182, *&c. marg. Story on Prom. Notes,* § 37, *a.*) (2.) The signing of the note by Good-

win, without the knowledge or consent of Babcock, was a material alteration and change of the original instrument and of its legal effect. It ceased to be the instrument executed by Babcock. He was no longer liable upon it. It became and was only valid as the several note of Goodwin. (*Pigot's case,* 11 *Coke's Rep.* 27. *O'Neale* v. *Long,* 4 *Cranch,* 60. *Speake* v. *The U. S.* 9 *id.* 28. *Gardner* v. *Walsh,* 32 *Eng. Law and Eq. Rep.* 162. *Potter* v. *Baker,* 4 *Paige,* 290–292. *Master* v. *Miller,* 4 *T. R.* 320. *Wheelock* v. *Freeman,* 13 *Pick.* 165 to 168. *Chappell* v. *Spencer,* 23 *Barb.* 584.) (3.) Even if Babcock was not discharged, the note, when Goodwin signed it, became the joint, or the joint and several, note of the two. As such contract, it had no legal inception or validity until it was discounted by and transferred to David Burton, on the 7th of March. (4.) The note or contract on which the advance was made, and the payment of which the defendant guarantied, had no inception or legal validity at any time, or in the hands of any one, until transferred to and held by David Burton. The money was not advanced on the original note made by Babcock. (5.) In any aspect of the case, the transaction between Goodwin and David Burton was usurious. It was an advance of $425 to Goodwin, on a contract by which the lender was secured, and there was agreed to be paid him therefor $500, and legal interest thereon, at the expiration of a year. This contract was, in legal effect, either the several note of Goodwin, the borrower, guarantied by the defendant, or it was the joint and several note of Babcock and Goodwin, so guarantied, having its first legal inception when transferred to the lender, for the advance. This, within all the cases, is usury.

IV. But again, without regard to the effect which the signing of the note by Goodwin had upon the liability of Babcock, the transaction was usurious, and the promise of Goodwin, and the guaranty of the defendant, void. (1.) There can be no dispute in this case but that David Burton advanced to Goodwin $425. (2.) He received therefor a promise or

agreement by Goodwin, not merely to repay him this sum and legal interest, but to pay him, for and in consideration of the advance, $500, and over seven per cent per annum on this latter sum, at the expiration of eleven months. This certainly is an agreement by which Goodwin expressly contracts to pay more than legal interest for the forbearance of money advanced to him, and is directly contrary to the statute to prohibit usury. (3.) The defendant guarantied the performance by Goodwin of his promise, i. e. to pay $500 and legal interest thereon, in consideration of the advance of $425, and giving day of payment therefor during eleven months. (4.) The contract or agreement made by Goodwin and by the defendants was in writing, and was express. The one as principal, and the other as surety, expressly agreed that, for the advance and forbearance of a sum of money, Goodwin would repay to David Burton the same, with more than legal interest. Where both the terms and legal effect of an agreement render it usurious, the court cannot give it any other effect, or hold that the parties intended any other result. (5.) Conceding, therefore, that the original note or promise made by Babcock is valid, and can still be enforced by the plaintiff against him, the promise by Goodwin, and the contemporaneous guaranty by the defendant of its fulfillment, are usurious and void. (*Johnson* v. *Morley, Lalor's Sup.* 29.)

V. The transaction cannot be held valid as against Goodwin or the defendant on the ground that it was the sale of a chattel, and not a loan of money. (1.) The cases in which it has been held that where the holder of a valid note sells it for less than its face, and indorses it, the transaction is not, *per se*, usury, proceed upon the ground that in form the transaction is the sale of a valid obligation, and there is no agreement by the party receiving the money to repay more than the sum advanced, and legal interest thereon. (*Cram* v. *Hendricks*, 7 *Wend.* 569, 614, 641–5. *Mazuzan* v. *Mead*, 21 *id.* 285. *Anderson* v. *Rapelye*, 9 *Paige*, 483 ; *S. C.* 4 *Hill*, 472 to 486.) (2.) It will hardly be claimed, in view of the

Burton *v*. Baker.

discussion in these cases, and the close votes by which they were decided, that they would have been held free from usury if the facts had been like those in this case. (3.) In the case at bar the transaction is not in form the sale of a note indorsed or guarantied by the party receiving the money. (4.) He became and was, if not the sole, clearly a joint original maker of the note discounted. (5.) The transaction was not in substance the sale of a note. The party receiving the $425 advance became and was a maker of the note on which it was advanced. He expressly, in terms, agreed, in consideration of the advance, to repay $500 and interest thereon. There was no note or obligation transferred to Burton except the note of which Goodwin was a maker. (6.) The court must construe the contract of Goodwin according to its clearly expressed terms. It is impossible to say that he agreed only to pay $425 and interest. Can it be said that on this instrument the plaintiff can recover of Babcock $500 and interest, and of Goodwin only $425 and interest ? This would be making a contract for the parties, in direct contradiction of the written terms made by them. Unless the court can do this, the transaction as to Goodwin and the defendant is plainly usurious.

VI. The court, therefore, erred in overruling the several propositions submitted by the defendant's counsel, and in refusing to dismiss the complaint, or order a verdict for the defendant.

VII. The court erred in the charge to the jury. The first proposition of the charge was erroneous. The pleadings and evidence did not present the question of whether there was a sale of a note or not. The evidence showed the money was not advanced upon a sale and purchase of a note, but upon an original contract by Goodwin to repay $500 and interest thereon. (11 *Paige*, 660.) The other propositions are also erroneous. Neither within the usury law, nor in any other sense, can a party be said to *sell* a note of which he is a maker. It has no value or validity, as to him, until he transfers it.

Unless we are wrong in all the points above submitted, there is error in the last clause of the charge.

VIII. The transaction as to Goodwin and the defendant is usurious, and the verdict should be set aside, and a new trial ordered.

*M. H. Throop,* for the plaintiff. I. No question arises here upon the verdict of the jury, or the weight, effect or sufficiency of the proof. This is a naked bill of exceptions, and the only question is whether the judge made any erroneous ruling in the progress of the trial.

II. The motion for a nonsuit was properly disposed of. The proof sustains the first count. The variation was immaterial— no proof was offered that the defendant had been misled. There was no testimony showing the note to be usurious, and all the allegations of the complaint being denied by the answer, there was nothing in the record showing it to be so. If the allegation of usury had been admitted of record, the result would have been the same, for the plaintiff sought to recover upon his first count only.

III. No exception arises to the denial of the motion for a nonsuit made at the close of the case. The legal positions taken by the defendant's counsel depended upon facts then yet to be ascertained by the verdict of the jury; except where they are comprised in the exceptions to the charge, and are discussed under the next point. Even if they had all been correct, no exception would lie; for the plaintiff having once proved a prima facie case, and rested, and the defense depending upon affirmative evidence, the court properly submitted the whole case to the jury. It is in all cases discretionary with the court to do so; and if the defendant has proved a defense, his remedy is not to be sought by exception.

IV. The charge was unexceptionable. The first exception will not, we presume, be insisted on. (3 *Wend.* 62. 13 *Barb.* 45.) The second and third exceptions are taken to two clauses of the charge, which properly belong together, and

will be considered together. The question whether the transaction was a sale of the note by Goodwin to Burton, or a loan of money from Burton to Goodwin, was fairly and fully submitted to the jury, who have found by their verdict that it was a sale. Assuming it to be a sale, the question is, whether upon a sale, at a discount, of a note valid in the holder's hands, the subscribing of the note by the holder, "without the knowledge or consent" of the maker, as a consideration of the sale, and part of the transaction, renders the transaction usurious, and avoids the simultaneous guaranty of the note. (1.) It is manifest that the first step of the defendant, to make out his side of the argument, must be to show that his principals (if Goodwin is, as to Baker, a principal) are, or that one of them is not liable. It is also manifest that unless Babcock was discharged by Goodwin's signing the note, Goodwin was a mere surety for Babcock; or to consider it in another aspect, the note, being several, was in effect two separate notes, one made by Goodwin, and one made by Babcock, Goodwin's note being held as security for the payment of Babcock's, and Baker being a guarantor of each. Goodwin's note, though in form for the full amount, was liable to be reduced to the amount of the advance, and upon neither note could Baker be made liable for more than the advance. All these principles are laid down in *Cobb* v. *Titus*, (13 *Barb.* 45,) affirmed in court of appeals. (*See Selden's Notes for April Term*, 1854.) The defendant cannot therefore avoid his liability if Babcock continued liable after Goodwin signed. Now we contend, as our first proposition, that the note became, by the signature of Goodwin, the *several* and not the *joint* and *several* note of Goodwin and Babcock, and the alteration did not discharge or affect Babcock's liability upon it. It has been held, since the earliest times, that any alteration of a contract after its execution, discharged the contracting party, who did not assent to it, provided it affected in any respect his contract or undertaking, but not otherwise. Formerly it was said that it must affect it to his prejudice; but that qualification need

not be insisted on here. Thus if a note for $500 is altered to $250, the maker not assenting, it may be conceded that he is discharged, because such was not his contract; but if his contract remains unaffected, the alteration is immaterial. (*Chitty on Bills*, 184. *Marson* v. *Pettit*, 1 *Camp.* 82, n. *Atwood* v. *Griffin*, 2 *Car. & P.* 368. 12 *U. S. Dig.* 33, § 7. 15 *id.* 33, §§ 11, 12. *Bruce* v. *Westcott*, 3 *Barb. S. C. R.* 374.) Although the signing the note by Goodwin made it prima facie, as between the makers and the holder, their joint and several note, (*Story on Prom. Notes*, § 57,) yet inasmuch as their liability to the holder was different, Babcock being liable for the full amount, and Goodwin for only $425 and interest, it follows that it was in fact their several note. (*Cobb* v. *Titus*, 13 *Barb.* 45.) If so, there is an end of the argument, for clearly a person who becomes severally liable with another, does not thereby in the least alter or affect the contract of the other party. This is admitted by counsel on both sides, and by the court, in the case in 32d Eng. Law and Eq., cited *post.* But treating it as a joint and several note, it is equally difficult to see how Babcock's liability was affected. His contract was to pay the whole note at maturity, and in addition to reimburse any person who might be compelled to pay it by becoming surety or indorser upon it; and it is difficult to see how the creation by another person of a joint liability with him, which was however, as between him and such person, a new contract of suretiship, affects in any respect his contract. This principle was supposed to be settled in England by the case of *Catton* v. *Simpson*, 8 *Adol. & Ellis*, 136, (35 *Eng. Com. Law Rep.* 355,) reported also in 3 *Nev. & P.* 248, 1 *W. W. & H.* 157, and 2 *Jur.* 888, cited also *Chitty on Bills*, 188. But the recent case of *Gardner* v. *Walsh* (32 *Eng. Law and Eq. Rep.* 162) is considered as overruling this case. It distinctly recognizes the doctrine, that if the note was several, the addition of a name does not affect the contract, but in the case of a note which had been executed by a principal and one surety, the addition

253

Burton *v.* Baker,

of another joint and several surety, without the consent of the first, was held to discharge the first surety. There is this broad distinction between this case and *Gardner* v. *Walsh*, viz. that there the question arose between two sureties for one principal, and here it is only the common case of one man who is surety for another. Adding the word " surety" after Goodwin's name would neither have increased nor diminished his liability, or altered his rights as respects the holder, or Babcock, (*Berg* v. *Radcliff*, 6 *John. Ch.* 303;) as to the holder, he is a joint and several maker, but as to Babcock, he is in judgment of law a surety within the ruling in *Cobb* v. *Titus*, and all the principles applicable to the relation. Unless the ruling in *Gardner* v. *Walsh* depended upon some peculiarity of the English practice, or some principle of law in relation to joint debtors in which their courts and ours differ, it must have rested upon the notion that the addition might affect the remedy for contribution between the sureties, or. the surety's right to recover against his principal. It could not have been, (at least as applied to the rule of law here,) because it subjected him to being joined in an action with another as defendant; for if that was the test, an indorsement would vitiate the note. In this case Babcock's liability and Babcock's contract were not changed—his original contract and his original liability were to pay the holder absolutely, or to refund to Goodwin if Goodwin was compelled to pay. He contemplated that Goodwin should make himself liable upon it. The rule in *Gardner* v. *Walsh* never has been, and never will be, followed in this country. A succession of names on notes, put there at different times, is one of the commonest things to meet with, and to hold that none of the signers except the last one are liable, would shock the sense of the whole business community. (*See Warner* v. *Price*, 3 *Wend.* 397; *Harris* v. *Warner*, 13 *id.* 400.) However open the question may have been in England, it is no longer open for argument in this state. *Norton* v. *Coons* (3 *Denio*, 130) is a direct authority sustaining *Catton* v. *Simpson*, and though the facts

are slightly varied, it cannot be distinguished from it on prin-
ciple.   The doctrine of *Gardner* v. *Walsh* is also irreconcil-
able with the case of *Cobb* v. *Titus*, (13 *Barb.* 45,) affirmed
in the court of appeals.   Any argument which reconciles
*Cobb* v. *Titus*, and *Gardner* v. *Walsh*, will also reconcile the
latter with the judge's charge in this case.   Such also was
assumed to be the law in 3 *Wend.* 397, and 13 *Wend.* 400 ;
and although the precise point was not taken in these cases,
yet the courts, and the profession, having acted upon the as-
sumption that such was the law, and it being impossible to
hold the contrary without overturning these cases and those
in 13 *Barb.* and 3 *Denio*, the question is no longer open.
(*Richards* v. *Edick*, 17 *Barb.* 264, 265.)   (2.) But assuming
that the legal effect of Goodwin's signing the note was to
discharge Babcock, the note is not rendered thereby usurious.
Two things must concur to make usury.   (*a.*) There must be
an intent to take unlawful interest, and the law in usury
cases pays no attention to the form of the contract, but only
looks at the intent of the parties.   (*Chitty on Cont.* 604.
*Nourse* v. *Prime*, 7 *John. Ch.* 69.   10 *U. S. Dig.* 425, § 13.)
(*b.*) There must be a loan.   (*Dry Dock Bank* v. *Am. Life Ins.
and Trust Co.*, 3 *Comst.* 344.   4 *Hill*, 224.)   The absence
of either of these requisites avoids the claim of usury.   Now
in this case the jury have found that neither of them exists.
Babcock's note was not thereby absolutely avoided, for, if it
had been, the debt would have been discharged also, whereas
it is well settled that an altered note will support an ac-
tion for the consideration.   (*Gould* v. *Combs*, 1 *M., G. & S.*
(50 *Eng. Com. Law*) 543 ; *S. C.* 14 *Law J., N. S.*, 175.
9 *Jur.* 494.)   It was therefore voidable merely, at Bab-
cock's election, and Baker's contract (and indeed Goodwin's
also) did not differ from the common case of a man guaran-
teeing an infant's contract.   The guaranty was that Babcock
should not exercise his election to avoid the contract.   There
can be no doubt that a subsequent assent to, and recognition

of, the alteration by Babcock, would make him liable without any new consideration or any new contract.

*By the Court,* PRATT, J. If the question in this case was an open one, I should have no difficulty in arriving at the conclusion that the transaction was tainted with usury.

The leading case of *Cram* v. *Hendricks* (7 *Wend.* 569) was based upon assumed principles that I never was able to comprehend. If the court had held, simply, that the sale of a valid pre-existing note or bill, although indorsed or guarantied by the seller, was not essentially a loan of money to him, but rather the sale of a chattel and therefore not usurious, the proposition would at least have been intelligible. But the court went further, and held that the indorsement or guaranty was not the undertaking it purported to be, but was simply a guaranty for the repayment of the amount received.

There have always appeared to me to be at least two palpable difficulties in regard to this decision. In the first place, if the transaction was the simple sale and transfer of a chattel, it is difficult to see upon what legal principles a guaranty of the payment or collection of it should not be treated the same as the warranty of the goodness or quality of any other chattel, and the party contracting held to respond in damages to the entire extent of his contract. The man who upon the sale of a horse warrants him to be good and sound, is, upon default, liable to respond in damages to the amount of the difference between the value of the horse as he actually was and as the vendor contracted him to be. The damages would not be affected at all by the price received for him upon the sale. But in the second place, if it be assumed that it is not an absolute sale of a chattel when the personal responsibility of the vendor is required, but that to the extent of the money received he is a borrower, and simply agrees, so far as he undertakes personally, to repay the amount received with legal interest, then, within every principle of law applicable to the statutes of usury, the transaction would be usurious. It would

be an absolute undertaking on the part of the borrower, that the lender should at all events be repaid his money with legal interest, with the chance of receiving an additional sum depending on the responsibility of the maker of the transferred note. The lender would therefore be receiving for the use of his money more than the legal rate of interest. But the error in that case, if there be any, must be deemed in this state ineradicable except through the action of the legislature. The case at bar is different from that of *Oram* v. *Hendricks*, and pushes the doctrine upon which the decision in that case was based to a still farther extreme. In this case there is not an indefinite indorsement or guaranty, but a specific undertaking to pay the whole amount, in so many words. As a case, therefore, unaffected by the decision in that and subsequent cases, I should have no difficulty in holding the rulings at the circuit erroneous.

1st. If the signing of the note by Goodwin, as maker with Wilcox, was without the consent of the latter, he would be discharged. It would be an alteration of it in its legal effect. (11 *Coke*, 27.  4 *Cranch*, 60.  9 *id*, 28.  32 *Eng. L. and Eq*. 162.) The note therefore, so far as it had any validity at the time of the guaranty and transfer to the plaintiff, was simply the note of Goodwin alone. As Goodwin received the money he must be deemed the borrower, and the transaction was usurious within all the cases.

2d. Assuming that Wilcox was not discharged, the note, as a joint and several undertaking, was not completed, and therefore did not have its inception until it was signed by Goodwin and transferred to the plaintiff. It was long ago held by Holt, Ch. J. that when a party signed a note as security, with the assent of the maker, after it was executed and delivered, it became a new contract, and required a new stamp, under the stamp act. (*Holt's N. P.* 474.) It was guarantied as a joint and several note, and no other. The claim that it might be treated as a several note is, at all events, as against the defendant, untenable. Upon this note, thus signed at the time,

Burton *v.* Baker.

one of the joint and several makers received, at the time of its inception, as a complete and valid instrument for the payment of $500, the sum of $425 only. It seems to me that it was as plainly a loan of that amount to Goodwin, as if the name of Wilcox had not been on the note.

3d. But assuming that the undertaking of Goodwin was several and not joint, then it must be deemed equivalent to a new note for $500. Suppose Goodwin had in fact, at the time of receiving the $425, given his note for $500, at one year, guarantied by the defendant, and at the same time transferred the note signed by Wilcox, could there be any doubt that Goodwin's note would be void for usury? It would be in legal effect a loan of the amount, to him, with a direct, specific undertaking to repay the amount and $75 as a usurious premium for the forbearance. In this aspect of the case it differs from that of *Cram* v. *Hendricks*, in its being, instead of a general indorsement of a valid pre-existing note, a direct undertaking to repay the whole amount, including the usurious premium. And the guaranty being collateral, this undertaking of course is invalid if the note itself is.

Examining the case, therefore, as a new one, and applying to it legal principles as old as the English statutes of usury, I would have no hesitation in holding the transaction usurious. But the case of *Cobb* v. *Peters*, (13 *Barb.* 45,) decided in this court and afterwards affirmed in the court of appeals, is directly in point to sustain the ruling at the circuit. The only difference is, that the action in that case was against the makers, and both were held liable, the last signer for the amount he actually received. But if an action can in this case be sustained against Goodwin, it will not be claimed that it cannot be sustained against the defendant. The case therefore is directly in point; and although it does not appear that any point was taken, in that case, that the first signer was discharged by the second party signing, yet the point was clearly in the cise, and the decision could not have been made except upon the assumption that he was not discharged.

Vol. XXXI.                    17

If an important consideration has been overlooked in the court of appeals, I think we should leave it to that court to correct the error. We should not assume that that court did overlook the point, but rather that all the points in the case, necessary to the decision, received the careful consideration of the court.

Motion for a new trial denied, with costs.

[OSWEGO GENERAL TERM, July 7, 1857.   *Hubbard, Pratt, Bacon* and *W. F.* Allen, Justices.