## McVean vs. Scott, administratrix, &c. and Colt.

C. and B. made their joint and several promissory note, for $1300, payable to the plaintiff, B. signing the name as surety for C. Subsequently, and after the maturity of the note, B. having failed, the plaintiff applied to C. for further security; whereupon Scott and Colt, at the request of C., severally signed the same note as sureties, which was again delivered to the plaintiff. *Held* that Colt and Scott, upon signing the note, respectively became jointly and severally liable for the payment thereof with C., the maker, and B., the surety, and liable to be sued thereon, jointly or severally, immediately.

The plaintiff elected to treat the note as a joint note, by suing Scott and Colt together, *as joint debtors.* The defendants, by not pleading the non-joinder of C. and B. as co-defendants, waived the objection. Scott having died, and E. S. having been appointed his administratrix, the court, on motion, ordered her to be substituted as defendant, in the place of Scott. Colt moved for a nonsuit, on the ground that the suit could not proceed against him and E. S. jointly. *Held* that the suit did not abate by the death of Scott, but that under the provision of the statute, (1 *R. S. part* 3, *title* 1, *ch.* 7, § 1,) the action could not proceed jointly against Colt and E. S.

That the action was properly revived and continued as against E. S.; but that this did not entitle the plaintiff to proceed with the action jointly against Colt and E. S.

That the order substituting E. S., in the place of her intestate, should be construed as allowing the suit to proceed against her separately, in the same manner, and with the same effect, as if she had been separately sued, or Scott had been separately sued in his lifetime.

That this prevented the statute of limitations from attaching and cutting off Scott's estate from liability on the note, and accorded with and carried out the design and intent of section 121 of the Code, to save the rights of parties in such cases.

That when brought into court, under the order, E. S. had the right to object to further joint proceedings against her with Colt, and to object to the recovery of a joint verdict and joint judgment against her; and that the plaintiff might have been required to elect as against which defendant he would proceed, or have been allowed to sever in the action, according to section 274 of the Code, at any time before the trial; but that a joint verdict against the defendants, to be followed by a joint judgment, was erroneous.

The addition of two names to a promissory note as makers, after its execution and delivery, without the knowlege or consent of a person who has previously signed it as surety for the original maker, is a material *alteration* of the instrument, as against such surety, and furnishes him, at his election, with a valid defense to the note.

The decision in *Chappell* v. *Spencer*, (23 *Barb.* 584,) reaffirmed, and declared not to have been overruled by the subsequent cases.

McVean *v.* Scott

Where a surety in a promissory note is insolvent, and has been discharged from liability by a material alteration of the instrument, if he chooses to defend on that ground, the holder is not bound to seek to enforce the note against him; certainly not unless requested to do so by his co-sureties, even if he is not insolvent.

An omission to sue, in such a case, is not equivalent to a release by deed or covenant, or affirmative act *in pais.*

THIS action was commenced by the plaintiff against William Scott, in his lifetime, since deceased, and Henry V. Colt, to recover the amount of a promissory note, purporting to be made by Henry Chamberlain, Daniel H. Bissell, William Scott and Henry V. Colt, to the plaintiff, for $1300, on the 7th day of May, 1852, payable in one year from date. It appears from the note that Henry Chamberlin was the principal, and the other makers were sureties, the word "surety" being added to the name of each of the others, except Chamberlin. The complaint contains two counts, or causes of action. The first alleges that on or about the first day of July, 1856, the said defendants, William Scott and Henry V. Colt, for a valuable consideration, made their promissory note of the amount above stated, and delivered the same to the plaintiff, wherein and whereby, one year from date, for value received, they jointly and severally promised to pay to the plaintiff the said sum of $1300, with interest; that the plaintiff is the lawful holder thereof, and that the same has not been paid, except, &c. The second cause of action alleges that on or about the 7th day of May, 1852, Henry Chamberlin, together with Daniel H. Bissell, made, executed and delivered to the plaintiff, a joint and several promissory note in writing, whereby, one year from date, they jointly and severally promised to pay to the plaintiff, or bearer, the sum of $1300, with interest; that said Bissell in fact signed the said note for the benefit of Chamberlin; that thereafter, and after the said note became due and payable, Bissell failed and became irresponsible; that the plaintiff thereupon applied to the said Cham-

berlin for further security, or to procure further sureties on said note. Whereupon, on or about the 1st day of July, 1856, the defendants Scott and Colt, at the instance and request of Chamberlin, *and for a valuable consideration,* severally executed the said note, by signing their names as makers thereto, whereupon such note, so signed by the said defendants, was duly delivered to the plaintiff. The plaintiff demanded judgment against the said defendants for the amount of the note and costs.

The defendants appeared in the action separately and put in several answers, setting up, however, the same defenses. The first answer is a general denial. The second and third answers set up the statute of limitations. The fourth answer alleges the making and delivery of the promissory note by Chamberlin and Bissell, on the 7th day of May, 1852, (setting out the note in *haec verba,*) and states that Bissell signed the note at the request of Chamberlin, and as "surety" for him ; that after the execution and delivery of the note to the plaintiff, and on or about the first day of July, 1856, the note being unpaid, the plaintiff procured the defendants to sign the note as sureties, without the knowledge, privity or consent of Chamberlin or Bissell, thereby altering the said note in a material part, and that by means of such alterations the said note became void. The fifth answer set up that the defendants signed said note as sureties for Chamberlin, at the request of the plaintiff; that the plaintiff allowed the statute of limitations to run against Bissell, whereby he became discharged from all liability on said note, by means thereof the defendants lost their claim against Bissell for contribution as one of the sureties of Chamberlin, and were prevented from enforcing such contribution in case they paid the note to the plaintiff. The de-fendants therefore claimed that in consequence of such neglect on the part of the plaintiff, they were discharged from all liability on the note. After the issue was joined, and on or about the 3d day of March, in the year 1863, the defendant

William Scott, died, and Elizabeth Scott was duly appointed his administratrix. The plaintiff's counsel afterwards, on motion, procured the said administratrix to be substituted as defendant in this action, in the place and stead of William Scott, deceased.

The action came on to be tried at a circuit court, held in for the county of Livingston, on the fourth Monday of October, 1865, before Justice Welles and a jury. After hearing the evidence in the case, the justice directed the jury to find a verdict for the plaintiff, for the amount of the note. The jury, under the direction of the court, found a verdict for the plaintiff for $1888.95, subject to the decision of the court at general term upon a case and exceptions to be made by the defendants ; the hearing to be had in the first instance at the general term.

*Scott Lord,* for the plaintiff.

*James Wood, Jun.* for the defendants.

*By the Court,* E. Darwin Smith, J. When the defendant Colt and the intestate, William Scott, signed the promissory note upon which this action was brought, they intended to become parties to said note, and to incur and create a legal liability on their part, respectively, to pay the same, if not paid by Chamberlin, the maker, and principal debtor. The note then was overdue. It was dated May 7, 1852, and Colt and Scott, according to the testimony of the plaintiff, signed it in July, 1857. Independently of the question of the alteration of said note and of the effect thereof upon the instrument, Colt and Scott, upon signing the note respectively, became jointly and severally liable for the payment thereof with Chamberlin the maker and Bissell the surety. So far as they were concerned, it was like making a new note on their part, payable on demand. It was due and payable the moment it was made and delivered by them, and they were thereafter parties to a promissory note over due and jointly

and severally liable for the payment thereof with Chamberlain and Bissell, and liable to be sued thereon jointly or severally immediately. The plaintiff has elected to treat said note as a joint note, by suing said Scott and Colt together thereon, as joint debtors. The defendants, not having pleaded the nonjoinder of Chamberlain and Bissell as co-defendants have waived that objection. (*Code*, §§ 147, 148 ;) but except as thus waived, they have all the rights, and are subject to all the liabilities, of joint debtors. So far as relates to the form of the action, the plaintiff was entitled, after the answer was put in, to proceed against Colt and Scott as sole joint debtors, during the lifetime of Scott. His death presents the first difficulty in the cause, as it appeared at the circuit. The defendant moved for a nonsuit, on the ground that the suit could not proceed against Colt and the administratrix of Scott jointly. The suit did not abate by the death of Scott. Section 1, title 1, chapter 7 of the Revised Statutes, part 3, page 386, provides in such cases — "that when there are two or more defendants in an action and one or more dies before final judgment, such death shall be suggested on the record, and the action proceed against the surviving defendant, as the case may require." Under this provision it is quite clear that the action could not proceed jointly against the defendant Colt and the administratrix of Scott. But the plaintiff has applied to the court and obtained an order, under section 121 of the Code, substituting the administratrix, Elizabeth Scott, in the place of the said William Scott, deceased, as defendant in the action, and allowing the same to proceed as against her as such administratrix. This order was not appealed from, and could not be reviewed at the circuit, and is not now before us for review. I do not see why we must not regard it, as the circuit judge was bound to do, as a valid order, and besides, I am inclined to think it was the intention of the legislature in passing section 121 of the Code, to enlarge the powers of the courts in respect to the abatement of actions upon the death of some

of the parties thereto, and to confer a greater discretion and power on this subject than previously existed. Colt and Scott were not parties. They had no common or joint property. There was no right of survivorship between them. They were each severally liable for the debt, and if either paid the note he would have simply a right to contribution, as against the other party, but no joint fund in his hands from which to make such payment. Partners are joint tenants, and must all be sued as joint debtors, and can not be sued separately. And in case of the death of one partner the survivor must pay the debt, and there can be no action against the executor or administrator of the deceased partner unless the surviving partner is insolvent. (*Voorhis* v. *Child's ex'r,* 17 *N. Y. Rep.* 354. *Grant* v. *Shurter,* 1 *Wend.* 148.) But this rule does not apply to parties severally liable for a debt by express contract. I think, therefore, we must regard the action as properly revived and continued, as against the administratrix of William Scott. But this does not, I think, entitle the plaintiff to proceed with such action jointly against Colt and Mrs. Scott. They could not have been sued jointly, at the time of the trial, but might have been sued as severally liable on said note, at any time after Mrs. Scott was appointed administratrix. As Colt, and Scott, in his lifetime, were severally liable on said note, and separate actions might have been commenced against them thereon, I think that the order substituting Mrs. Scott should be construed as allowing the suit to proceed against her separately, in the same manner and to the same effect as if she had been separately sued, or her husband had been separately sued in his lifetime. This prevents the statute of limitations from attaching and cutting off his estate from liability on said note, and accords with and carries out the design and intent, as I think, of said section 121 of the Code, to save the rights of parties in such cases. When brought into court under this order, the defendant Mrs. Scott, as administratrix, &c. I think, had the right, as if sued jointly by summons, to object to further

joint proceedings against her with the defendant Colt, and to object to the recovery of a joint verdict and joint judgment against her. The plaintiff, I think, might have been required to elect as against which defendant he would proceed, or have been allowed to sever in the action, according to section 274 of the Code, at any time before the trial; but a joint verdict, I think, is erroneous. In this view the court at the circuit should have nonsuited the plaintiff. A joint verdict must be followed by a joint judgment, which I think would be erroneous, and as we can not direct such judgment I think we must direct a new trial. (*Gardner* v. *Walker*, 22 *How. Pr. Rep.* 405. 15 *Barb.* 526. *Parker* v. *Jackson*, 16 *id.* 33.) But as this point is one of mere form, and a new trial to correct this error would simply result in returning to us, probably, the same questions presented now upon the merits, I think we should pass upon the other questions in the case.

The point chiefly urged upon us on the argument in behalf of the defendants was, that the addition of the names of Scott and Colt to the note without the consent of Bissell, was a material alteration of the instrument and avoided it. This point was chiefly based upon the case of *Chappell* v. *Spencer*, (23 *Barb.* 584,) and the argument involved an inquiry or discussion of the question how far, if at all, that case had been since overruled. In *Chappell* v. *Spencer* we held that the addition of another maker to a joint and several promissory note, after it was completed and had had a perfect inception, *without the consent of the previous maker*, rendered the note void as against such *previous parties*. The action in that case was not, as in this, against the new parties on the note; and in the opinion granting a new trial we said : " Possibly the plaintiff may prove that the defendants consented to the alteration, and if so they would be estopped from making the defense;" thus expressly asserting the validity of the note, as against such consenting parties. In the case of *Brownell* v. *Winnie*, in the Court of Appeals, (29 *N. Y. Rep.* 409,) speaking of this case of *Chappell* v. *Spencer*,

Judge Mullin said of it, that "although that case had not been itself overruled, yet this court, in *Cobb* v. *Titus*, came to a conclusion wholly at war with that case, and must be understood as overruling it and the cases on which it rests." In this I think the learned judge is quite mistaken. In *Cobb* v. *Titus*, (10 *N. Y. Rep.* 198,) the note upon which the action was brought had had a valid inception before it was signed by O. N. Titus, the defendant, and who alone made defense in the action. The case discussed and considered in the case was one of usury, and it was held that there was no usury in the case, because the note had had a valid inception before it was signed by the said O. N. Titus. The question of the alteration of the note was not discussed or considered, but if it had been, within the case of *Chappell* v. *Spencer*, O. N. Titus, who made the alteration by signing his own name to the note after its inception, was estopped from setting up any such defense. He could not allege that the note was materially altered and rendered void by his own act. He made and consented to the alteration, and could not impeach the contract. The case of *Partridge* v. *Colby & Nason*, (19 *Barb.* 248,) which the learned judge considers in conflict with *Chappell* v. *Spencer*, is in like manner in perfect accordance with that case. Nason, who alone defended in that, was the new party who signed the note and made the alteration. He clearly could not make any defense to the note based upon an alteration of the instrument made by himself. The learned judge also refers to *Burton* v. *Baker*, (31 *Barb.* 241,) and says of it that the case of *Cobb* v. *Titus* was understood by the Supreme Court, in deciding that case, as holding "that the addition of a maker did not vitiate the note." In this case of *Burton* v. *Baker*, Judge Pratt asserts, without qualification, the principle decided in *Chappell* v. *Spencer*. He says, "if the signing of the note by Goodwin as maker with Wilcox, (meaning Babcock,) was without the consent of the latter, he would be discharged; it would be an alteration of it in its legal effect." The question in that

case was whether the note had any inception before the alteration and before its transfer to the defendant; and the court held that if it had there was no usury in the case. The action was not defended by Babcock, the maker, but by Baker who negotiated it knowing of the alteration, and who consented to the same, and who guarantied its payment contemporaneously with the making of such alteration by Goodwin. The alteration having been thus made with the consent and at the request of Baker, neither he nor Goodwin, the new party to the note, could have alleged such alteration as a defense. In the chief case of *Brownell* v. *Winnie,* the note was made by one Swinton, for a good consideration, and was a valid note in the hands of Winnie. The alteration consisted in Winnie's adding his name to the note as another maker. Winnie, who alone made defense, set up and urged his own alteration of the note as his defense. This clearly he could not do, within the rule of *Chappell* v. *Spencer,* and the decision in this case is in precise accordance with that case, and not a reversal of any thing therein asserted or decided. In the case of *McCaughey* v *Smith,* (27 *N. Y. Rep.* 39,) the court did not profess to overrule *Chappell* v. *Spencer.* In that case one Hungerford signed the several note of one Hall after it was made and delivered and indorsed by Smith. Smith defended, and set up the alteration as a defense. Judge Emott admits the rule as to the alteration of promissory notes as the same was held in *Chappell* v. *Spencer.* He says: "It is certainly the result of the later authorities that the addition of another maker to a note by one or more parties is a material alteration in the contract." He put the reversal of the decision of the court below, so far as his view of the case is expressed in the opinion, upon the ground that Hungerford was guarantor of the note and not a maker, and four judges concur with him in reversing the judgment below, as the reporter states, "without passing upon the character of Hungerford's liability." The case must needs be decided, and was therefore decided without asserting any principle,

McVean *v.* Scott.

·and decides no principle; and the decision is clearly errone-ous, as is usually. the case in such exigencies. · The case of *Chappell* v. *Spencer* remains therefore the law. According to that case, the signing of the note in question in this action by Scott and Colt, without the knowledge and consent of Bissell, was a material alteration of said note as against Bissell, and furnished him, at his election, with a valid defense to said note. This defense is not available to any other of the par-ties to said note. ˙ Not to Chamberlain, because he procured Scott and Colt to sign their names to it,· and not to them because such alteration was their own act and deed, and they can not impeach it, and they have. nothing to do with the question whether Bissell is or is not thereby discharged.

Another point is, that the plaintiff allowed the statute of limitations to run against Bissell, and he was thereby dis-·charged. This point I think untenable. If Bissell remained liable on the note after Colt and Scott put their names to it, they were at liberty to pay it up at any time and enforce it against him. But he is shown to have been insolvent, and was clearly discharged from liability by the alteration of the note, if he had elected to defend on that ground; and the plaintiff was not bound to seek to enforce it against him ; certainly not unless requested to do so by Colt and Scott, even if he had not been insolvent. An omission to sue, in such a case, is not equivalent to a release by deed or cove-nant or affirmative act *in pais.*

I do not see in this case any valid defense upon the merits, for either of these defendants ; and if we were at liberty to sever the action, after verdict, and render separate judgments against Colt and the administratrix of Scott, a new trial might be avoided. · But I think when an action has been tried and a verdict rendered, the judgment must conform to and follow the verdict ; and for this reason there must be a ·new trial. New trial granted.

[MONROE GENERAL TERM, September 3, 1866. *Welles, Johnson* and *E. D. Smith,* Justices.]