CASE 9—PETITION EQUITY—JANUARY 15.

| 85 | 41 |
|---|---|
| 107 | 338 |

| 85 | 41 |
|---|---|
| 110 | 569 |

# Singleton, &c., v. McQuerry.

APPEAL FROM GARRARD CIRCUIT COURT.

1. THE ALTERATION OF A NOTE by the addition, at the instance of the obligee, of another maker, after the issual of the paper, and without the consent of the first one, vitiates it.

2. VENDOR AND VENDEE—LIMITATION.—A vendee is in possession under a title bond, and resists the enforcement of the lien for the purchase money, on the ground that the notes executed therefor are void, and that the claim for the purchase money is barred by the five years' statute of limitation. *Held*—That he must elect either to rescind the contract of purchase upon equitable terms, or submit to the enforcement of the lien.

J. H. BROWN AND ANDERSON & HERNDON FOR APPELLANTS.

1. A material alteration of a note or a mutilation thereof, made by the payee or by his procurement or consent, vitiates the note and renders it void for all purposes, discharging the obligors from liability for the debt itself, and not merely destroying the evidence of the debt.

Adding the name of another drawer or maker to a note or bill is a material alteration such as will discharge the original parties not consenting thereto. (Parsons on Notes and Bills, vol. 2, 556-7; Shipp v. Suggett, 9 B. M., 5.)

2. The debt itself being destroyed, no lien exists. (Vandiver v. Hodge, 4 Bush, 539; Yeates v. Weeden, 6 Bush, 438.)

3. If the alteration of the note destroyed merely the written evidence of the debt and not the debt itself, the action is barred by limitation.

H. C. KAUFFMAN FOR APPELLEE.

1. While it is a general rule of law that a material alteration of a deed, without the consent of the obligor, renders the deed void (Sheppard's Touchstone, p. 68), the Court of Appeals of Kentucky has looked with disfavor upon that rule, and it has never been applied in the case of the alteration of a note, by the addition of another maker, except in favor of a surety. (Pulliams, &c., v. Withers, 8 Dana, 99; Bank of Limestone v. Penick, 5 Mon., 25.)

2. The addition of a surety without the knowledge or consent of the principal does not release the principal. (Miller v. Finley, 26 Mich., 250; Brownwell v. Winnie, 29 N. Y., 400; 10 Am. Dec., note on page 270.)

3. The alleged fraudulent contract of the sale of land to G. W. Singleton,

by appellee, after the death of D. W. Singleton, not being in writing, was not an enforceable contract (Smith v. Fah, 15 B. M., 444), and, therefore, did not affect appellants.

4. Appellant ought not to be allowed to refuse to pay for the land and yet continue to hold it

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

D. W. Singleton on February 16, 1876, bought from the appellee, Joseph McQuerry, a tract of land, and executed the two notes, now in suit, for the two last payments. The appellee gave to Singleton a bond for a title, it to be made when all of the purchase money should be paid. The latter died intestate in August, 1878, leaving a widow and three children, who are the appellants. He left no estate save this land, and no administration has ever been granted. After his death, and without the knowledge or consent of the appellants, the appellee, on September 20, 1878, procured one G. W. Singleton to sign the notes as an obligor, and one or the other of them being then, in some way not disclosed by the record, in possession of the title bond, the appellee made this indorsement upon the back of it: "I, Joseph McQuerry, agree to give said Singleton three payments, as follows: 1st, one hundred ($100) dollars on the 20 Sept., 1879; the 2nd one hundred ($100) dollars 20 Sept., 1880; the 3d one hundred ($100) dollars 20 Sept., 1881, the whole amount for which I hold said Singleton's notes, being the remainder on above land payments.   This Sept. the 20th, 1878.

(Signed)        "JOSEPH McQUERRY."

He also agreed with G. W. Singleton that he should have so much of the land at seven dollars and fifty cents an acre as would amount to the two notes on D. W. Singleton, which G. W. Singleton then signed and agreed to pay.

We have recited the above as facts, because the demurrer to the answer so admits. A personal judgment was asked against G. W. Singleton, but not against the appellants; and the enforcement of a lien against the land. The latter never consented to the arrangement or any part of it between the appellee and G. W. Singleton; indeed, did not know of it, so far as appears from this record, until this suit was brought. They rely upon it to defeat the claim to subject the land, and present the plea of *non est factum* as to the signature of D. W. Singleton to the notes. They were not altered in the body, but G. W. Singleton simply signed his name to them as an obligor.

As early as Pigot's case (11 Coke, 26), it was held that when any deed is altered in a point material, by the plaintiff himself, or a stranger, without the privity of the obligor, be it by interlineation, addition or erasure, it renders it void. This case has been followed ever since by the English courts, and recognized as the rule in perhaps all the States of our Union where the common law prevails, unless it be as to executed contracts and when the alteration is by a stranger. It has been universally applied in case of all *material alterations* of written instruments, by the *holder*, without the consent of the party to be affected thereby, the reason being that the purity and integrity of legal instruments should be preserved. It has generally been held that the adding of another maker or obligor to a bill or note is a material alteration, because it alters its identity and affects its integrity. It cannot be said that the maker promised in manner and form as stated in the declaration. This is the basis of the

rule, save in a few States, where it has been made to
depend upon the question whether the alteration was
fraudulently made.   (Nicholson v. Combs, &c., 90 Ind.,
515; Chappell v. Spencer, &c., 23 Barb., 584.)

Turning to the decisions in this State, we find that
in the case of the Bank of Limestone v. Penick, 5
Monroe, 25, where, after the issual of a joint and
several promissory note by two, a third person, without
their knowledge, signed it, and his name was inserted
in a blank left in the body for that purpose, it was
held to be a material alteration and rendered the note
void.  In the case of Pulliam, &c., v. Withers, 8 Dana,
98, where the note, after its issual by the principal,
was without his knowledge signed by a surety at the
instance of the obligee, the doctrine in Bank v. Penick,
*supra*, was reaffirmed; but it being unnecessary to do
so, the court declined to decide whether the mere taking
of another obligor would vitiate the paper in the ab-
sence of any alteration or change in the body of it.   In
the case of Shipp's Adm'r v. Suggett's Adm'r, 9 B.
Monroe 5, however, the point was decided; and it
was held that if, after the execution and delivery of a
note by one obligor, another, without his knowledge,
signed it at the instance of the obligee, it rendered it
void without any change in the body of it.   This
rule is founded on good policy, which dictates that
the integrity and legal identity of the paper should
be maintained.   The addition of another name changes
the number of parties, the ratio of contribution, their
relative rights, and the character and description of
the instrument.   The obligors first signing may thereby
be subjected to a change of jurisdiction in the event

of litigation; and a surety, who has obtained indemnity, may incur the risk of its loss by the change of identity. If an additional name is procured in order to strengthen the debt, and not for some undue advantage, the holder can easily obtain the assent of the previous obligor. By the addition, the paper speaks a different language, and has a different legal operation, thus showing that the change is material.

Mr. Parsons, after reviewing the various cases relating to the question, says: "But we think the wiser rule is that which looks first to the integrity of the instrument, and secures that, though there be no actual injury nor purpose of fraud." (2 Parsons on Notes and Bills, p. 559.) In this we concur, and think, in the light of both authority and reason, that the addition, at the instance of the obligee, of another maker after the issual of the paper, and without the consent of the first one, vitiates it.

In this case, however, no deed has ever been made to the land. The appellee yet holds the legal title. The appellants, it is true, are not asking that a title be made to them, but that they shall not be disturbed, although they admit that they are in possession of and claiming the land, and have never paid for it. In fact, they are in this very suit upon the idea that the notes are not enforceable, but that the claim for the purchase money exists, pleading the five-year limitation statute as a bar to any recovery; thus manifesting that they intend to keep the land without paying for it. They are in equity; and to permit them to avoid the payment of the balance of the purchase money, and yet retain the land, would, in

effect, work a fraud. Equity, in such a case, in order to prevent it, reaches beyond the law; and while, for the reasons above stated, the appellee cannot, in the face of their objection, enforce his notes as a lien upon the land, yet they cannot be allowed to hold it without payment. It was error upon the part of the lower court to enforce the notes as absolutely binding, but the appellants must either elect to rescind the contract of purchase upon equitable terms, or submit to the enforcement of the lien; and upon the return of the cause to the lower court, the chancellor will afford them a reasonable opportunity to make this election.

Judgment reversed, and cause remanded for further proceedings consistent with this opinion.