Decided January 17, 1898.

WALLACE *v.* TICE.

[ 51 Pac. 733.]

</div>

32  283
a36  274

1. EFFECT OF ALTERING AN INSTRUMENT.— A material alteration of an instrument, made with a fraudulent and vicious intent by the party claiming a benefit under it, avoids the instrument and extinguishes all liability thereon.

2. IDEM.— Where the alteration of an instrument is prompted by honest motives, with a purpose of correcting it to correspond with what the party in good faith believed to be the true engagement of the

parties at the time of its execution, the act does not destroy the legal efficiency of such instrument, and recovery may be had on it when restored.

3. JURISDICTION OF EQUITY TO CORRECT ALTERED NOTE.— A court of equity has jurisdiction of a suit to restore the original conditions of a note alleged to have been changed under misapprehension of the rights of the parties, and to recover thereon, when the suit involves a discovery, which is in some degree necessary to show the agreement and the mistake.

From Multnomah:  LOYAL B. STEARNS, Judge.

Suit by Susan M. Wallace against Jonathan Tice and F. J. Alex Mayer, administrator of the estate of George Herrall, deceased. From a decree for plaintiff, the administrator appeals.

AFFIRMED.

For appellant there was a brief over the names of *Durham, Platt & Platt, Edward Mendenhall* and *Edward B. Watson,* with an oral argument by *Mr. Benjamin B. Beekman* and *Mr. Mendenhall.*

For respondent there was a brief over the name of *Caples & Allen,* with an oral argument by *Mr· Greenbury W. Allen.*

MR. JUSTICE WOLVERTON delivered the opinion.

This is a suit to restore the original conditions of a promissory note which it is alleged were changed by the payee, under mistake and misapprehension of the rights and agreements of the parties, and to recover thereon against the makers. It is also sought to subject certain property to the satisfaction thereof, which it is alleged was transferred by Tice to Herrall, in trust to indemnify

him against the payment of such note and other
demands.  So far as it respects this latter branch
of the case, it is sufficient to say that plaintiff's
allegations in reference thereto are not supported
by her proofs.

Three questions remain for solution: (1) Has a
court of equity jurisdiction of the cause, as it re-
mains dismembered of the alleged trust relations?
(2) Can a recovery be had upon the altered note?
And (3) is the name "Geo. Herrall," appended to
said note, his genuine signature? As concerns the
latter question, the evidence leaves scarcely a doubt
in our minds that it should be answered in the
affirmative.  The fact appears palpable upon its
face, by comparison with other signatures shown
to be his, and the testimony of competent experts
and Herrall's indirect admissions lead to the same
conclusion, aside from the direct testimony of Tice
that he saw him sign the note.  Further comment
can serve no good purpose.  We will treat of the
other questions in their inverse order.

The facts relative to the execution and altera-
tion of the note, succinctly stated, are as follows:
Early on the morning of the eleventh of August,
1891, Tice called upon Mrs. Wallace, and arranged
with her for a loan of $2,000, he agreeing to give
Herrall as security.  Mrs. Wallace wrote out the
note, dating it "Aug. 11," and made it payable one
year after date.  Tice took it to Herrall the same
day, and, after himself signing in the presence of
Herrall, procured the latter's signature thereto.  On
the following day Tice returned with the note thus

executed, but, before delivering her check for the money, Mrs. Wallace changed the date, in his presence, from "11" to "12." She testifies: "I gave the note on the 11th, and he did not bring it back until the next day, and the note seems to be the 12th. Of course, I don't remember positively of making the change. * * * If there was any change made, it was to correspond to the time it was given,—a year from the time." Answering the succeeding interrogation, she says, in substance, that the change, if any there was, was made to correspond with the agreement between the parties. On redirect examination she continues as follows: "Q. Was there any reason at all in your mind for changing the note, other than to make it agree, correspond with the agreement? A. Of course; I had no intention of anything wrong. I should not have done it had I known it was not right or lawful. Q. What reason was there, if any, why you should change the note? Did you gain anything by it or lose anything by it? A. There was nothing, unless it would be to make it from the date given, —a year from the date given. Q. That is, a year from the time the note was delivered to you, and a year from the time you gave the check to Mr. Tice? A. Yes, sir; I gave the check to him that date." Tice testifies that, when he received the note, it bore the date of August 11th. Continuing, he says: "On the 12th I went up to Mrs. Wallace's to get the money for the note, and she gave me the money. She changed the date of the note from the 11th to the 12th. I think she changed it be-

fore she passed the check. There was nothing said about it; only she changed the note. * * * I know no reason why the note should be changed, unless it was on our part that the note was to run one year, and she would collect interest for one more day than I had the money"; and, in substance, that Mrs. Wallace made the change without objections by him.

1. It may be conceded that the alteration made is material, and upon this premise we will determine the legal effect thereof. The rule may be said to be settled that a material alteration made fraudulently, and with vicious intent, by the party claiming a benefit under it, will avoid the note, and extinguish the liability, and henceforth no recovery can be had: *Vogle* v. *Ripper*, 34 Ill. 100 (85 Am. Dec. 298). There is a strong current of authority, however, which holds to the doctrine that while an alteration, though material and unauthorized, which was innocently and honestly made, and without any fraudulent or improper motive, avoids the note, nevertheless an action will lie upon the original indebtedness if it is independent of the note, and has not been discharged by its execution: *Booth* v. *Powers*, 56 N. Y. 22, 30, 31; *Lewis* v. *Schenck*, 18 N. J. Eq. 459 (90 Am. Dec. 631); *State Savings Bank* v. *Shaffer*, 9 Neb. 1 (31 Am. Rep. 394, 1 N. W. 980); *Hunt* v. *Gray*, 35 N. J. Law, 227 (10 Am. Rep. 232); *Vogle* v. *Ripper*, 34 Ill. 100 (85 Am. Dec. 298). And many authorities permit the action to be maintained upon the note itself: *Horst* v. *Wagner*, 43 Iowa, 373 (22 Am. Rep. 255); 2 Parsons' Bills and

Notes, 570; *Duker* v. *Franz*, 7 Bush, 273 (3 Am. Rep. 314); *Adams* v. *Frye*, 3 Metc. (Mass.) 103; *Smith* v. *Dunham*, 8 Pick. 246; *Milbery* v. *Storer*, 75 Me. 69 (46 Am. Rep. 361); *Croswell* v. *Labree*, 81 Me. 44 (10 Am. St. Rep. 238, 16 Atl. 331); *Rogers* v. *Shaw*, 59 Cal. 260; *Murray* v. *Graham*, 29 Iowa, 520; *McRaven* v. *Crisler*, 53 Miss. 542; *Foote* v. *Hambrick*, 70 Miss. 157 (35 Am. St. Rep. 631, 11 South. 567). It was early held in *Bowers* v. *Jewell*, 2 N. H. 545, that "it is reasonable and just to permit a party to show that the alteration was by consent of those interested, was by accident, or under circumstances rebutting every presumption of improper motives." In *Lewis* v. *Schenck*, 18 N. J. Eq. 459 (90 Am. Dec. 631), the agent of the payee altered the note soon after its execution, in the absence of the makers, by inserting the words "with interest from date," honestly believing that he could legally make the change to correspond with what he supposed to be the real agreement of the parties, entered into prior to the execution of the note; and it was held that the alteration was under a mistake of fact, and the plaintiff was permitted to recover. In *Croswell* v. *Labree*, 81 Me. 44 (10 Am. St. Rep. 238, 16 Atl. 331), the words "or bearer" were inserted by the payee after delivery, and without the knowledge or consent of the maker. It was ruled by the lower court that if the alteration was made innocently, without any fraudulent or improper motive, it would not avoid the note, and the ruling was sustained by the supreme court. And in *Duker* v. *Franz*, 7 Bush, 273 (3 Am. Rep. 314), the change was from "1868"

to "1869," by making a "9" over the "8," and it was held that it did not destroy the legal efficacy of the note.

2. We think the following deduction is within the cases: That where the alteration is prompted by honest and pure motives, with a purpose of correcting the instrument to correspond with what the party honestly and in perfect good faith believed to be the true engagement of the parties at the time of the execution, the act does not destroy the legal efficacy of the note, and recovery may be had upon it when restored: *Rogers* v. *Shaw*, 59 Cal. 260; *Kountz* v. *Kennedy*, 63 Pa. St. 187 (3 Am. Rep. 541); *Horst* v. *Wagner*, 43 Iowa, 373 (22 Am. Rep. 235). We come the more readily to this conclusion in view of our statute, which makes it incumbent upon the party producing a writing appearing to have been altered after its execution, in a part material to the question in dispute, to account for the alteration before he will be permitted to give it in evidence. He may explain the alteration by showing that it was made by another without his concurrence, or was made with the consent of the parties affected by it, or otherwise properly or innocently made. Hill's Ann. Laws, § 788. Now, it is perfectly apparent that Mrs. Wallace was not impelled by any fraudulent motive in making the change in the date of the note sued upon. It is also just as apparent that she was acting under an honest misapprehension of her right to make the change to correspond with what she supposed to be the agreement with Tice and

Herrall to loan them $2,000 for one year, and that, in order to make the contract conform to what she understood the agreement to be,—that is, to loan the money for a full year,—she made the change, intending it for the benefit of the makers. It was of no benefit to her, but, on the contrary, operated as a real detriment; of small proportions it may be, but it was actual and patent. If it were adjudged that for such an act, prompted solely by the purest motives, yet involving a misapprehension of the right and authority to do the act, the suitor should be turned away remediless, the result would be an obvious and palpable failure of justice in a great majority of cases if not in every instance.

3. The remaining question, touching the jurisdiction of a court of equity to entertain the suit, is not entirely free from doubt. But as the act which it is claimed avoids the instrument was done under mistake and missapprehension, and the suit involves a discovery which is in some degree necessary to show the agreement and the mistake, the jurisdiction ought to be sustained. Such is the exact ruling of *Lewis* v. *Schenck*, 18 N. J. Eq. 459 (90 Am. Dec. 631). See, also, *Nickerson* v. *Swett*, 135 Mass. 514. The decree of the court below will therefore be affirmed.

AFFIRMED.