Argued October 5; reversed November 10; rehearing denied
November 29, 1938

# STACEY *v.* FRITZLER ET UX.

(84 P. (2d) 97, 499, 119 A. L. R. 887)

*Arthur Langguth,* of Portland (Louis S. Dunsmore, of Portland, on the brief), for appellant.

*J. Leroy Smith,* of Portland (O. J. Gatzmyer, of Portland, on the brief), for respondent.

ROSSMAN, J.   This is an appeal from a judgment of the circuit court which awards the plaintiff recovery

against the defendant-appellant, Carl Fritzler, upon a promissory note in the denomination of $450. No recovery was awarded against his codefendant, Elizabeth Fritzler. The judgment was entered in an action upon a note which bears the signature of the defendant, Carl Fritzler, and the purported signature of Elizabeth Fritzler. The judgment is based upon findings of fact and conclusions of law.

The complaint alleges that on September 22, 1921, the defendants, Carl and Elizabeth Fritzler, for value received, executed and delivered to Conrad Klaus their promissory note in the denomination of $450. A copy of the note is a part of the complaint. It recites: "Two years after date, without grace, I promise to pay—" Then follows the usual language of a promissory note. The complaint avers that the plaintiff is its assignee, that no part of the principal has been paid, and no interest since August 29, 1933. The answer denies all of the aforementioned averments "except that defendant Carl Fritzler admits that on or about the 22 day of September, 1921, he made, executed and delivered his promissory note in the sum of $450 to said Conrad Klaus." It pleads the defense of payment. The action was originally instituted in the district court of Multnomah county, resulting in a judgment in favor of the defendant upon the plea of payment. Upon appeal to the circuit court, findings of fact were entered, reciting that Klaus died September 15, 1931, and that after probate of his estate his heirs assigned the note to the plaintiff. We now quote from the findings:

"Defendant, Elizabeth Fritzler, did not sign said note; that said defendant, Elizabeth Fritzler, cannot write her name, or at all, and was not present at the time of the execution or delivery of said note; that at the time of the delivery of said note by Carl Fritzler

to Conrad Klaus, the only signature on said note was the signature of Carl Fritzler. That said note was unsecured, and the name and cross (X) of Elizabeth Fritzler was appended to said note by someone unknown claiming a benefit under said note after delivery, for the purpose of giving a greater security to said note; that the addition of the name 'Elizabeth Fritzler' was at all times unauthorized and without the knowledge of defendant Carl Fritzler or defendant, Elizabeth Fritzler."

The conclusions of law state:

"Defendant, Carl Fritzler, is liable for the payment of said note,   *   *   *."

The sole issue awaiting decision is whether the latter is the proper conclusion to be drawn from the quoted finding. The appellant contends that the unauthorized addition of his wife's signature to the note, done without his knowledge and consent, constitutes a material alteration, releasing him from liability. The plaintiff argues otherwise.

■ According to the copy of the note which forms a part of the complaint, the name of Elizabeth Fritzler was written directly under the signature of the appellant. No one contends that her signature, unauthorized as it was, was intended to make her a surety or a guarantor. The place where the signature appears, under the circumstances described in the findings, certainly warrants a conclusion that the individual who placed it there intended that she should become a maker: *Lumbermen's National Bank v. Campbell,* 61 Or. 123 (121 P. 427), and 10 C. J. S., Bills and Notes, p. 460, § 37b.

The issue before us, therefore, is: Does the addition of another maker, without the consent of the

original maker, constitute an alteration of the note, discharging him. Section 57-806, Oregon Code 1930, being § 124, Uniform Negotiable Instruments Act, provides:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except  *  *  *"

Here follows an exception which is not material to this cause. The section then continues:

"When an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

Section 57-807, Oregon Code 1930, being § 125 of the Uniform Act, says:

"Any alteration which changes  *  *  *  4. The number or relation of the parties;  *  *  *  or any other change or addition which alters the effect of the instrument in any respect is a material alteration."

In support of her contention, the respondent cites *Mersman v. Werges*, 112 U. S. 139 (28 L. Ed. 641, 5 S. Ct. 65); *Wallace v. Tice*, 32 Or. 283 (51 P. 733); *Reilly (Ryan) v. First National Bank of Springfield*, 148 Ill. 349 (35 N. E. 1120); Sellover, Negotiable Instruments Law, p. 304; and 2 C. J., Alteration of Instruments, p. 1219, § 83.

■■ We shall now undertake a review of these authorities, but as we proceed it is well to have in mind the fact that one who becomes an endorser, a surety or a guarantor upon a note in no way affects or interferes with the relationship between the maker and the payee. His agreement is a new one, separate and independent from the one existing between the original parties, and imposes a duty to pay only in the event that the maker fails to discharge the note. It, therefore, does not

change "the number or the relation of the parties" to the payor-payee agreement, if we may borrow the language of § 57-807, Oregon Code 1930.

The following much-quoted language found in *Ford v. First National Bank* (Tex. Civ. App.), 34 S. W. 684, states the manner in which the addition of a new maker affects the relationship between the original maker and the payee:

"The reason why the addition of a name to a note, as a joint maker, after its issuance, materially alters it, is because it changes the number of parties and their relative rights; it changes the rate of contribution; and it changes the character and description of the instrument. The original obligor may thereby be subjected to a suit in a county other than that of his residence, and suffer inconvenience and injury, as was done in this very case."

See to like effect *Bank of Commerce v. Webster*, 70 Okla. 73 (172 P. 942, L. R. A. 1918F, 696). It is also well to bear in mind the fact that the additional signer cannot avail himself of the defense, if any, which is applicable to the original signers; in other words, the note is valid so far as he is concerned.

*Mersman v. Werges*, supra, was a suit to foreclose a real estate mortgage signed by Caspar A. Werges and wife, and describing property owned by the latter. Only Werges signed the note, but after its delivery to the payee, some unauthorized person signed Mrs. Werges' name to it without the knowledge and consent of either husband or wife. The plaintiff, a holder in due course, was ignorant of the manner in which the wife's name was signed to the instrument. The debt out of which the note arose was not the obligation of the wife, but of a partnership to which she was a

stranger. The court, in holding that the mortgage could be foreclosed, stated:

"If the wife had herself signed the note, she would have been an accommodation maker, and in equity at least, a surety for the other signers; and neither the liability of the husband as maker of the note, nor the effect of the mortgage executed by the wife as well as by the husband, to secure the payment of the note, would have been materially altered by the addition of her signature. There appears to us, therefore, to be no reason why the plaintiff, as endorsee of the note, seeking no decree against the wife personally, should not enforce the note against the husband, and the mortgage against the land of the wife. * * * The addition of a new person as a principal maker of a promissory note, rendering all of the promisors apparently jointly and equally liable, not only to the holder, but also as between themselves, and so far tending to lessen the ultimate liability of the original maker or makers, has been held in the courts of some of the states to be a material alteration. * * * However, that may be, yet where the signature added, although in form that of a joint promisor, is in fact that of a surety or guarantor only, the original maker is, as between himself and the surety, exclusively liable for the whole amount, and his ultimate liability to pay that amount is neither increased or diminished; and, according to the general current of the American authorities, the addition of the name of a surety, whether before or after the first negotiation of the note, is not such an alteration as discharges the maker. * * *"

*Wallace v. Tice,* supra, was a suit by a payee of a note who had altered its date from August 11 to August 12 to restore the note to its original condition. The facts were that Tice, who later became the maker of the note, applied to Mrs. Wallace for a loan of $2,000 which she agreed to make if one Herrall would also sign the instrument. Before Tice left, Mrs. Wallace prepared the note, dated it August 11, and handed it

to him for execution. Tice did not return the note until the following day, that is, August 12. It then bore his signature as maker and that of Herrall as endorser. On that day Mrs. Wallace handed him $2,000, and, in his presence, substituted for the numeral 11 the numeral 12, so that the date corresponded with the day when the loan was actually made. In the suit under review she sought to restore the original date. In sustaining the circuit court, which had awarded the prayed-for relief, this court declared:

"The rule may be said to be settled that a material alteration made fraudulently, and with vicious intent, by the party claiming a benefit under it, will avoid the note, and extinguish the liability, and henceforth no recovery can be had. * * * We think the following deduction is within the cases: That where the alteration is prompted by honest and pure motives, with a purpose of correcting the instrument to correspond with what the party honestly and in perfect good faith believed to be the true engagement of the parties at the time of the execution, the act does not destroy the legal efficacy of the note, and recovery may be had upon it when restored."

It will be observed that the court was concerned, not with action upon the note in its altered condition, but with a suit to restore the note to its original condition.

*Reilly v. First National Bank of Springfield*, supra, was an action upon a promissory note which when executed and delivered named the First National Bank of Springfield as payee and bore the signature of P. P. O'Donnell directly under the signatures of the makers. The latter gave the note to O'Donnell for merchandise which he sold to them, but the intention was that the note should be discounted by the bank just mentioned. The two makers and O'Donnell took

the note to the bank where its cashier induced O'Donnell to endorse it. O'Donnell, instead of signing his name upon the back of the note, wrote it at its foot under the signatures of the makers. The bank then discounted the instrument and the parties dispersed; but later O'Donnell returned alone, requesting that his signature be removed from the face of the note, adding, however, that he was willing to sign upon the reverse side. The following alterations were then made: O'Donnell's signature was erased from the foot of the note; he signed upon its reverse side; and his name was inserted on the face of the note in front of that of the bank so as to indicate that he was a payee. The makers claimed that material alterations were indicated by these facts. In dismissing this contention, the decision declared that it was the intention of the makers from the outset to obligate themselves to pay to the order of the bank, and that "the change of the payee and the endorsement and guaranty had therefore no other effect than to carry out the intention of the parties when they signed the note". It stated that the bank's purpose in requesting O'Donnell to endorse the note was not to add him as a maker, but as an endorser, and that the transfer of his signature from the foot of the note to its back did not affect his status as an endorser. The court, recognizing that an alteration which changes the rights, interests or obligations of the parties extinguishes the liability of all parties who did not authorize it, held that the alterations shown by the above circumstances were not material.

The page of Sellover, Negotiable Instruments Law, above cited, contents iself with a quotation from *Reilly v. First National Bank of Springfield*, supra, which it erroneously cites as *Ripley* v. First National Bank of Springfield.

The excerpt from the above-cited section of Corpus Juris upon which the plaintiff depends follows:

"The addition of a principal promisor is generally held not to be a material change which will discharge the original maker; but the general current of authorities which permit such a change tends to this conclusion: That, although the addition of a maker is in the form of a joint promisor, whether made before or after the negotiation of the instrument, it is not an alteration which will discharge the maker where the addition is in fact that of a surety or guarantor only."

We have read all of the decisions cited by the editor in support of his above statement, and do not believe that, apart from *Union Banking Co. v. Martin*, 113 Mich. 521 (71 N. W. 867), they suggest a conclusion that the addition of a maker without the consent of the original maker is not a material alteration which discharges the original maker. The decision in *Union Banking Co. v. Martin*, supra, which is very brief, cited as authority for its holding that the addition of a maker is not a material alteration: *Miller v. Finley*, 26 Mich. 249 (12 Am. Rep. 306), and *Gano v. Heath*, 36 Mich. 441, in both of which cases the additional name was that of an endorser. In *Union Banking Co. v. Martin*, the name added appears to have been that of an endorser, and the texts which cite that decision generally classify it among those where an endorser was added.

We shall now proceed with a consideration of the other citations appended to the above statement in Corpus Juris. *Mersman v. Werges,* and *Reilly (Ryan) v. First National Bank of Springfield,* we have already reviewed; and it will be recalled that in each of those cases the name of an endorser, not that of a maker, was added: *Butte First National Bank v. Weidenbeck*, 97 Fed. 896 (38 C. C. A. 131) ; *Montgomery R. Co. v. Hurst*, 9 Ala. 513 (the obligation was several) ; *Ives v. Mc-*

*Hard*, 2 Ill. App. 176; *Taylor v. Acon*, 1 Ind. T. 436 (45 S. W. 130); *Stone v. White*, 8 Gray 589; *Miller v. Finley*, supra; *Gano v. Heath*, supra; *Royse v. St. Joseph State National Bank*, 50 Neb. 16 (69 N. W. 301); *Barnes v. Van Keuren*, 31 Neb. 165 (47 N. W. 848); and *Ex parte Yates*, 2 De G. & J. 191, 59 Eng. Ch. 152, 44 Reprint 961, were concerned with the additions of endorsers, not makers. In *Cason v. Wallace*, 4 Bush 388, the additional name was that of a guarantor. *Wallace v. Jewell*, 21 Oh. St. 163 (8 Am. Rep. 48), and *Reid v. Humphrey*, 6 Ont. App. 403, each were concerned with the addition of a maker and each held that the addition of a maker, without the knowledge and consent of the original maker, was a material alteration which vitiated the note. We have not so far mentioned the several New York citations which form a part of the footnote: *Brownell v. Winnie* (1864), 29 N. Y. 400 (86 Am. Dec. 314), was an action upon a note made by one Swinerton to the order of the defendant Winnie. Later Winnie discounted the note with the plaintiff who, however, required him to sign his name to it. Winnie signed under the signature of the maker, and upon being sued contended that by signing his signature in the manner just indicated he altered the note, thereby vitiating it. The decision (Court of Appeals), in holding him liable, stated:

"A note written 'I promise to pay', etc., can never be made a joint contract however many names may be added to it. The law permits an action against the makers as upon a joint or several contract, but the contract itself is not changed. The liability of the first signer is the same, however many may be joined in the action with him. * * *"

We pause to take note of the fact that in this state the liability upon a note of the kind just indicated is

both joint and several: Section 57-117, Oregon Code 1930 (§ 17 Uniform Neg. Instr. Act); *First National Bank v. Dodd*, 118 Or. 1 (245 P. 503) ; *Noble v. Beeman-Spaulding-Woodward Co.*, 65 Or. 93 (131 P. 1006, 46 L. R. A. (N. S.) 162). The New York court, in the decision from which we just quoted, indicated that *Chappel v. Spencer* (1857), 23 Barb. 584, had been overruled. The decision (Supreme Court) just mentioned, which contains a very careful review of the authorities, held that an instrument is deemed materially altered when the payee, upon discounting the note, signs his name under the signature of the makers, even though he adds the word "surety" after his name. We quote from the decision the following:

"In Pigot's case (11 Coke's Rep. 26,) it was resolved that when any deed is altered in a point material, by the plaintiff himself, or a stranger, without the privity of the obligor, be it by interlineation, addition, erasing or by drawing a pen through a line or through the midst of a material word, the deed thereby becomes void. The court of king's bench, in Master v. Miller (4 T. R. 320), applied this rule, as thus stated, to a bill of exchange, and declared it applicable to all written instruments. Lord Kenyon says of the Pigot case, that it establishes the principle that all written instruments which are erased or altered shall be void. This case was affirmed in the exchequer, in 5 T. R. 367, and has ever since been followed by the English courts. * * * In regard to what is material in such cases, in Chitty on Bills, the small work by Joseph Chitty, jun., at page 100, it is said, 'The alteration of a bill, note or check, in regard to the date or time of payment, the place where it is to be paid, or the parties to make the payment, as by adding another drawer or maker to a bill or note as an after-thought, after it was completed, is material, and will discharge the parties from responsibility; so with an alteration which varies the nature of the liability of the parties, as to the making of a joint note joint and

several, or the addition of words rendering the instrument negotiable.' * * *''

The court expressed its conclusion in the following:

"The weight of authority upon this question, in England and in this country, is certainly against a recovery by the plaintiff in this case, on the ground that the addition of another maker is a material alteration of the note."

*McVean v. Scott* (1866), 46 Barb. 379, held that the addition to a promissory note of two names, as makers, without the consent of the surety, constituted a material alteration which discharged him. In so holding, the court negated the intimation in *Brownell v. Winnie*, supra, that *Chappel v. Spencer*, supra, had been overruled, and indicated that *Brownell v. Winnie* was faulty in its reasoning. It pointed out that Winnie, who had signed as an additional maker, was the very individual who was using that circumstance in an effort to escape liability, and that while that defense might have been available to the maker, it was not to him.

In *Card v. Miller* (1874), 1 Hun 504 (Supreme Court), the facts were that the defendant John Miller executed and delivered to one Knapp his promissory note payable to the order of Knapp. The note stated: "I promise to pay * * *" Knapp, without the knowledge or consent of Miller, went to the latter's mother and persuaded her to sign the note under her son's signature. Then the note, by the process of negotiation, came into the possession of the plaintiff, a holder in due course. The son claimed a material alteration, discharging him from liability. In holding that the note was enforceable against both defendants, the court stated:

"The authorities are in conflict upon this subject. In Chappel v. Spencer, and in McVean v. Scott, such

an alteration is held to be material, and to avoid the note, as to the original maker. But, in Brownell v. Winnie, and McCaughey v. Smith, such an alteration has been held by the Court of Appeals not to be material, or to affect the validity of the note. It is true that the original maker of the note did not defend, in Brownell v. Winnie, and that the person making the alteration alone defended, so that the precise question was not before the court. The case of McCaughey v. Smith, has been severely criticised in McVean v. Scott, and declared to be bad law. Still, in the face of two such distinct declarations of the law of this case by the Court of Appeals, I do not feel at liberty to say the alteration under consideration was material. This note was a several note, and it may well be said, the liability of John K. is not increased or varied by the addition of his mother's name as an additional maker, any more than it would have been, if she had guaranteed the payment of the note. Had the form of the signature, as set up in the complaint, to wit: 'John K. Miller and Parmelia Miller', been established upon the trial, a different question might have been raised; because such signature would import, in law, a joint, and not a several liability. But the case shows only the several signatures of the two defendants, by which a several, and not a joint liability is created.''

In *McCaughey v. Smith* (1863), 27 N. Y. 39, the defendant Smith, as endorser, signed a note which named him as payee, and of which one Hall was maker. Hall had executed and delivered the note to the plaintiffs in exchange for merchandise which he and one Hungerford bought for them. Later the plaintiffs, without the knowledge or consent of Smith, induced Hungerford to sign the instrument. He wrote his signature directly over Hall's. Smith was the only party who defended; he claimed that the above-mentioned alteration released him from liability. The Supreme Court sustained his defense. The Court of Appeals, in the

decision above cited, reversed that judgment in the following manner. Justice Emott stated:

"It is certainly the result of the later authorities, that the addition of another maker to a note made by one or more parties is a material alteration of the contract. Instead of being the several or the joint obligation of the original party or parties, it becomes the joint or joint and several undertaking of different contractors. It is not material whether the change be prejudicial or the contrary; it is sufficient that it is material."

He held, however, that Hungerford should be deemed a guarantor and not a maker, and that, therefore, his signature did not materially alter the contract between Smith and the plaintiffs. Four other members of the court concurred in that conclusion, which ordered a new trial, without expressing their views except to say, "Concurred without passing upon the question as to the character of Hungerford's liability". Three members of the court dissented, stating that "the Supreme Court rightfully held in this case that the plaintiffs, by procuring Hungerford to sign the note, as additional surety, or maker, without the knowledge or consent of the defendant Smith, who had indorsed it, discharged the latter".

None of the other New York decisions cited in the footnote under review is more recent than the foregoing; therefore, we shall not review them.

■ None of the above authorities, with the exception of *Union Banking Company v. Martin*, supra, supports the plaintiff's contention. The decision just cited is very brief; in fact, as already indicated, it contents itself with a citation of two earlier Michigan decisions, neither of which, however, supports its holding; in fact, *Union Banking Co. v. Martin*, like the two decisions

upon which it relies, was an instance of the addition of a surety rather than of a maker. The decisions, which hold that the addition of an endorser, a guarantor or a surety do not constitute a material alteration, do not justify a conclusion that the addition of a maker does not effect a material alteration. In fact, some of the decisions concerning the addition of sureties, of which *Mersman v. Werges,* supra, is an example, expressly recognize that the addition of a maker vitiates the note when the objection is presented by a nonconsenting original maker. *Brownell v. Winnie,* supra, and *Card v. Miller,* supra, are instances of a several note; whereas the one before us is a joint and several instrument. None of the authorities so far reviewed was concerned with the previously quoted sections of the Uniform Negotiable Instruments Act. Virtually all of the above decisions were written before that act was drafted by the commissioners. *Wallace v. Tice,* supra, does not speak of the principles governing recovery upon a note, but of the principles that are applicable to a suit for its restoration. But if we are mistaken in this interpretation of that decision, we, nevertheless, remain bound by the provisions of the Uniform Negotiable Instruments Act which was adopted after that decision had been announced.

The appellant (defendant) Carl Fritzler, in support of his contention that the addition of his wife's name without his knowledge and consent, effected a material alteration which discharged him from liability, cites, in addition to the aforementioned statutory provisions, *Palomaki v. Laurell,* 86 Or. 491 (168 P. 935); *Wallace v. Tice,* supra; *Bank of Moberly v. Meals,* 316 Mo. 1158 (295 S. W. 73); *Schram v. Johnson,* 208 Iowa 222 (225 N. W. 369); *Morrison v. Harmon,* 112 W. Va. 280 (164

S. E. 145); 2 Parsons' on Notes and Bills, p. 556; 3 R. C. L., Bills and Notes, p. 1115, § 330.

*Bank of Moberly v. Meals*, supra, was governed by the Uniform Negotiable Instruments Act. In that case two days after a note had been signed by its three makers and had been delivered to the payee, the latter induced one Otto Meals to sign it. Concerning the place of his signature, the court said:

"There can be no question, we think, but that he intended to sign and did sign the note involved in this proceeding as an original promisor, and that he did so at the instance of the payee bank. As a consequence, his signing effected a change in the number of parties to the note."

The court also declared:

"If the evidence merely disclosed that the note had been delivered to the bank by the parties who first signed and endorsed it and thereafter Otto Meals placed his signature on it and redelivered it to the bank, the presumption would arise that he signed as guarantor. * * * And if he had signed as guarantor such signing would not have effected an alteration of the note because his undertaking would have been collateral to and independent of that of the original parties * * *"

After quoting from the provisions of the Uniform Negotiable Instruments Act, which provides that any alteration changing "the number or relation of the parties" is a material alteration, the court held that the addition of Meals' name as a maker was a material alteration which discharged the nonconsenting makers. It pointed out that whether the alteration was beneficial or injurious to the original makers was unimportant, declaring that the sole question was whether the rights of the original makers were materially affected by the addition.

In *Schram v. Johnson*, supra, the defendant Johnson had borrowed from the plaintiff, through the latter's agent Van Slyke, $1,500 for which Johnson gave his note. Both he and his codefendant Baker denied that the latter had executed this note, which when produced bore the signatures of the two. Baker plead forgery and Johnson plead material alteration. Upon the trial judgment was entered against both defendants. In reversing this judgment because of the erroneous admission of testimony and erroneous instructions to the jury, the decision under review stated:

"Would an unexplained appearance of Baker's name upon the note as a maker, attached thereto without Johnson's knowledge and consent, after the completion of the transaction as between Johnson and Schram, through Van Slyke, as the latter's agent, constitute a material alteration, so as to avoid the instrument as against Johnson? We answer in the affirmative. See sections 9585 and 9586 of the Code;   *   *   * In the latter case, it is well stated: 'From the foregoing facts it appears that, as to Hooper and William and Cordelia Moody, the note was fully executed and delivered to the agent of plaintiff before it was signed by Ferguson, and his signature was obtained by James Hamilton (the agent of plaintiff) without their knowledge or consent. The law is well settled that this constitutes a material alteration of the note, which avoids it as to all the prior parties thereto'."

*Morrison v. Harmon*, supra, was an action upon a promissory note which bore the signature of the defendant A. M. Harmon and the purported signature of his wife. Harmon swore that when he delivered the note to the bank his wife's name did not appear thereon as a maker or otherwise. This testimony was uncontradicted and presented the issue whether the alteration to which he had not given consent vitiated the note as to him. The court, after quoting from §§ 124 and 125

of the Uniform Negotiable Instruments Act, resorted to the above-cited sections of Parsons' on Notes and Bills, and Ruling Case Law as authority for its conclusion that the addition of a drawer to a bill or note is a material alteration. It expressed the belief that the materiality of an alteration does not depend upon whether it increases or diminishes the maker's liability, but upon whether the instrument, as altered, expresses the same contract as before. It quoted from *Carey Mfg. Co. v. Watson*, 58 W. Va. 189 (52 S. E. 515):

"The most effective means of preserving the integrity of such agreements is the rule that a material alteration destroys the agreement, so that no recovery can be had upon it, either in its original or its altered condition."

Many authorities which adopt the same view as the three decisions which we have just reviewed may be found cited in 5 Uniform Laws, Annotated (Negotiable Instruments), p. 791, note 82; Brannan's Negotiable Instruments Law (5th Ed.), p. 969, and the following annotations: 44 A. L. R. 1246, L. R. A. 1918F 698, 86 Am. St. Rep. 94.

From 2 Am. Jur., Alteration of Instruments, p. 639, § 57, we quote:

"It would seem to be a well-established rule, both in England and in the United States, that the addition to a note or other instrument of the signature of a new maker or obligor is, as to all prior nonconsenting makers, a material alteration. No inquiry will be made as to whether the alteration is injurious or beneficial to nonconsenting parties; the theory is that the person so executing the instrument makes it his own and that it is in effect the execution of a new instrument."

From 3 C. J. S., Alteration of Instruments, p. 939, § 30, we quote:

"Aside from any question as to a change in the signature of an instrument which has been considered

in § 25, or as to the filling of blanks as to the name of a party which will be considered in §§ 62-74, as a general rule any change in an instrument, in the hands of a party thereto, without the consent of the opposite party; in the personality, number or relations of the parties, constitutes a material alteration such as will avoid the instrument."

■ A review of the authorities indicates that the above-cited sections of the Uniform Negotiable Instruments Act have been uniformly construed as providing that the addition of a maker to a note releases from liability all nonconsenting makers. Many decisions, prior to the adoption of that act, had held to similar effect. These circumstances are a powerful argument that the act should receive a similar construction in this state; for nothing is gained if we achieve uniformity of legislation, but lack of uniformity of decision. In addition, the Texas court, in *Ford v. First National Bank*, from which we quoted in a preceding paragraph, succinctly but clearly showed that the addition of a maker effects a material change in "the relation of the parties". Again, commercial paper passes freely in the channels of commerce, and those who possess such instruments ought to be punished with loss if, through their negligence or fraudulent conduct, they permit material alterations to be made.

■ We are clearly satisfied that the aforementioned provisions of our Negotiable Instruments Act demand a conclusion that the addition of Elizabeth Fritzler's name to the note constituted a material alteration which absolved the defendant-appellant from liability.

■ The plaintiff's contention, which she does not support with either argument or citation to authorities, that she was a holder in due course is clearly without merit. The plaintiff accepted the instrument after it

had been dishonored and when that circumstance was apparent upon its face. Therefore, she was not a holder in due course. Section 57-402, Oregon Code 1930 (§ 52, Uniform Act).

■ The denials contained in the answer constituted a sufficient means of presenting the issue of alteration. *Palomaki v. Laurell,* supra, and *Farmers & Stockgrowers Bank v. Pahvant Valley Land Co.,* 50 Utah 35 (165 P. 462).

It follows from the foregoing that the judgment of the circuit court concerning the appellant must be reversed. The findings of fact demand a judgment in favor of both defendants.

BEAN, C. J., and KELLY and BELT, JJ., concur.

———

Petition for rehearing denied November 29, 1938

ON PETITION FOR REHEARING
(84 P. (2d) 499, 119 A. L. R. 887)

ROSSMAN, J.   The plaintiff has filed a petition for a rehearing in which she contends that the statement contained in our previous decision, declaring that whoever placed Elizabeth Fritzler's signature to the note intended that she should become liable as a maker, is wholly without support.  We are surprised that such a contention is made. The complaint avers:

■ "On the 22d day of September, 1921, the defendants, Carl Fritzler and Elizabeth Fritzler, for value received made, executed and delivered to Conrad Klaus their promissory note   *   *   *"

Here follows a copy of the note, and, as stated in our previous decision, it appears to bear at its foot the signature of Elizabeth Fritzler as well as that of her hus-

band. It is nowhere averred that Elizabeth signed as an indorser, gurantor, surety, or in any other secondary capacity. In 10 C. J. S., Bills and Notes, § 582, at page 1204, it is stated:

"In an action against indorsers of a promissory note, they should be designated as such."

In 8 Am. Jur., Bills and Notes, § 959, at page 566, it is stated:

"In an action against an indorser of a negotiable bill or note, on his contract of indorsement, where presentment, demand and notice of dishonor are conditions precedent to his liability, the holder, in order to recover, must by a proper pleading allege that he presented the instrument for payment at the time and place of payment and gave to the indorser notice of dishonor * * *."

In *Case v. McKinnis,* 107 Or. 223 (213 P. 422, 32 A. L. R. 167), it is stated:

"The steps necessary to bind an indorser are presentment for payment, refusal to pay, and notice of dishonor. The contingent liability does not become a consummated liability unless these steps are taken or unless they are waived."

The complaint contains none of the averments essential to charge one who is secondarily liable; to the contrary, it is couched in the language customarily employed against joint makers. It is evident that if the plaintiff believed that Elizabeth's signature was added for any purpose except that of eventually charging her as a maker, the appropriate averments would have been made in the complaint. In *Everding & Farrell v. Toft,* 82 Or. 1 (150 P. 757, 160 P. 1160), it is stated:

"At the very beginning of the investigation of this branch of the controversy it must be premised that for the purposes of this appeal the plaintiff has by its

pleadings fixed the character of liability which it seeks to impose upon Toft. The complaint charges Toft with being an indorser in due course of business, and therefore he could not at the trial, nor can he on this appeal, be held liable as a maker or as a guarantor.''

We repeat that Elizabeth Fritzler's signature was added for the purpose of charging her as a maker. No other conclusion is possible.

It has been suggested—not, however, by the plaintiff—that since Elizabeth's signature was a forgery, as distinguished from an authorized signature, the real maker was not released from liability. In order to make our position clear, we direct attention to the fact that the complaint in the averment quoted in the preceding paragraph describes Elizabeth as a maker and seeks recovery against her as well as against her husband; in other words, the plaintiff treats the forged signature as genuine, and based upon it seeks judgment against Elizabeth as a co-maker. Further, the findings concerning her signature, and which are quoted in our previous decision, state that it ''was appended to said note by someone unknown claiming a benefit under said note.'' It is clear that the note has been materially altered and that the plaintiff seeks to avail herself of the benefits of the alteration. The authorities cited in our previous decision clearly hold that under these circumstances no recovery is possible in this action.

The petition for a rehearing is denied.

Bean, C. J., and Kelly and Belt, JJ., concur.