192 So.2d 609 (1966)
C. R. THOMPSON, d/b/a Thompson Feed and Seed, Plaintiff-Appellant,
v.
O. L. TAYLOR, Defendant-Appellee.
No. 1857.
Court of Appeal of Louisiana, Third Circuit.
December 1, 1966.
*610 Mitchel M. Evans, DeRidder, for plaintiff-appellant.
James C. Terrell, Jr., Leesville, for defendant-appellee.
Before TATE, FRUGÉ, and HOOD, JJ.
TATE, Judge.
The issues of this case concern the maker's liability where there has been a material alteration of a negotiable instrument. A payee sues upon the altered instrument itself; alternatively upon the underlying debt evidenced by the instrument, if the material alteration is deemed to have discharged the maker's liability on the note.
This suit arises out of three promissory notes totalling $13,750 executed by the defendant Taylor, as maker, in favor of the plaintiff Thompson, as payee. The notes were then endorsed by Thompson over to the McMillan Feeder Finance Corporation, as part of a chicken-farm financing transaction.
As found by the trial court, the preponderance of the evidence reflects that the signature of Taylor's wife was forged to the instrument at the time the notes were transferred from Thompson to McMillan. This addition of Mrs. Taylor's signature was made in order to comply with some of McMillan's financing regulations.
*611 Thompson knew of and acquiesced in this forgery.[1]
The evidence shows that both the plaintiff Thompson and the representative of McMillan cooperated in this alteration. However, the maker Taylor did not learn of this alteration until after suit was brought on the notes.
1. The maker's liability upon the altered notes.

The maker Taylor's liability on the notes themselves is governed by LSA-R.S. 7:124, 7:125 of the Negotiable Instrument Law.
Under LSA-R.S. 7:125(4), an alteration which changes the number of the relations of the parties is a material alteration. The effect of such an alteration is set forth in LSA-R.S. 7:124: "Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration, and subsequent indorsers. * * *"
By reason of these statutory provisions, the consistent jurisprudence holds that the note is voided against the maker Taylor by the addition of his wife's name as a co-maker.[2]
The decisions interpreting these provisions of the Uniform Negotiable Instrument Law hold that the addition of the name of another maker to a negotiable instrument is a material alteration which absolves the original nonconsenting maker of liability on the note to anyone except a holder in due course. See Stacey v. Fritzler, 160 Or. 231, 84 P.2d 97, 119 A.L. R. 887 (1939) (addition of wife's name as co-maker; discusses authorities); Annotation, Addition of maker * * * as material alteration discharging nonconsenting party, 119 A.L.R. 898 (see pp. 898-899: "It is clearly the general rule * * * that the addition of a maker to commercial paper is such a material alteration of the paper that nonconsenting obligors thereon are relieved from liability thereunder."); Britton, Bills and Notes, Section 278 (2d ed., 1961); 3 C.J.S. Alteration of Instruments § 30(1); 4 Am.Jur.2d Alteration of Instruments, Section 47; 5 U.L.A., Section 125. For Louisiana cases holding that a material alteration precludes recovery on a note against a party who did not assent to the alteration, see American Guaranty Co. v. Sunset Realty & Planning Co., 208 La. 772, 23 So. 2d 409, 445; Watts v. Brooks, La.App. 1 Cir., 136 So.2d 403 and cases cited therein; Simmons v. Green, 2 Cir., 18 La. App. 492, 138 So. 679.
The rationale of this rule avoiding a note to which the name of another maker has been added was stated in Singleton v. McQuerry, 85 Ky. 41, 2 S.W. 652, 653 (1887): "The addition of another name changes the number of the parties, the ratio of contribution, their relative rights, and the character and description of the instrument. The obligor's first signing may thereby be subjected to a change of jurisdiction in the event of litigation * * *. If an additional name is procured in order to strengthen the debt, and not for some undue advantage, the holder can easily obtain the assent of the previous obligor. By the addition, the paper speaks a different language, and has a different legal operation, thus showing that the change is material." See also 4 Am.Jur.2d Alteration of Instruments, Section 47.
*612 Hence, the addition of his wife's name to the notes without the knowledge of the defendant Taylor constituted a material alteration which absolved him of liability on the notes.
2. The maker's liability for the original indebtedness.

Alternativelyif this court holds that the maker Taylor is not liable upon the notes, the plaintiff Thompson contends that at any rate he should be allowed to recover for the original $14,000 consideration furnished by him in return for the notes signed by Taylor. Thompson suggests also that otherwise Taylor will be unjustly enriched.
In American jurisdictions, the virtually unanimous rule is that a material alteration, if fraudulently made, discharges not only the note but also the underlying debt evidenced by it and thus bars recovery for the original consideration furnished. However, if the alteration is nonfraudulent, the creditor may recover upon the original indebtedness, even though his recovery upon the note itself is barred because of the material alteration.
See: Annotation, Material alteration which avoids note, as affecting debt for which note was given, 127 A.L.R. 343; Britton on Bills and Notes, Section 286 (2d ed., 1961); 5 U.L.A. Section 124; 4 Am.Jur.2d Alteration of Instruments, Section 32; Williston, Discharge of Instruments by Alteration, 18 Harv.L.Rev. 165 (Part II) at 175-178 (1904). See, e. g.: Simmons v. Green, 2 Cir., 18 La.App. 492, 138 So. 679, noted, 7 Loyola L.Rev. 62 (1953); Note, Material AlterationRight of Action on Original Debt, 33 Tul.L.Rev. 263 (1958). See also e. g.: Layfield v. Lewis, 268 Ala. 666, 109 So.2d 839 (1938); Swartz v. Bank of Haileyville, 169 Okl. 22, 35 P.2d 701 (1934); Sherman v. Connecticut Mut. Life Ins. Co., 222 Mass. 159, 110 N.E. 159 (1915).
The rule is said to be one founded in public policy, in order to preserve the integrity of legal instruments by taking away the temptation to tamper with them, and in order to prevent one from committing a fraud and yet not running any risk of losing if detected. 4 Am.Jur.2d Alteration of Instruments, Section 32.
The general distinction drawn by the cases is between an innocent alteration made merely to correct a mistake or to make the instrument conform as to the true intention of the parties, as opposed to an alteration made for the advantage or convenience of the person making it. In the former situation, recovery on the original contract will be allowed; in the latter, it will not.
The purpose of the alteration in the instant case was not to correct the notes so that they would conform with the real intentions of the parties. Neither Mr. Taylor nor his wife intended for her signature to be on the notes. The fraudulent purpose was to add the wife as an additional obligor for the better security of the payee and the endorsee of the note.
Therefore, then by reason of this legal principle, the plaintiff payee Thompson's recovery on the basis of the original consideration furnished is also barred.
3. Unjustified enrichment.
The plaintiff Thompson further contends that, even though he had been denied recovery (a) on the original note and (b) on the original contract of loan or sale evidenced by the note, then that at any rate he should be permitted recovery (c) on a quasi-contractual cause of action of unjustified enrichment. Thompson points out that Taylor will be unjustly enriched by retaining the $14,000 worth of credit or chickens received by him, for which he executed the notes which were voided by the material alteration by the endorsee McMillan.
*613 For the doctrine of unjustified enrichment to apply, there must not only be an enrichment of one person and the impoverishment of another, but also an absence of a legal cause for the enrichment of one at the expense of the other. Nicholas, Unjustified Enrichment in the Civil Law and Louisiana Law, 36 Tul.L.Rev. 605 (Part I) (1962), 37 Tul.L.Rev. 49 (Part II) (1962); Planiol, Civil Law Treatise, Volume 2, Sections 932-938 (LSLI Translation, 1959); 2 Dalloz Repertoire de Droit Civil, "Enrichissment sans Cause", Section 3, Nos. 71-131 (1952).
The plaintiff bases his claim for unjustified enrichment upon LSA-Civil Code Article 1965. This article provides for application of the principle preventing unjust enrichment only in instances where the law or the contract is silent as to the rights of the parties as to the recovery sought.[3]
Moore v. Housing Authority of City of Opelousas, La.App. 3 Cir., 125 So.2d 504, 508; Clarke v. Shaffett, La.App. 1 Cir., 37 So.2d 56, 58-59.
Similarly, by the French jurisprudence a suit cannot be based on unjust enrichment if * * * another action asserting substantially the same claim is barred or denied by an express rule of law. In other words, the action will not lie if the enrichment and improverishment is justified by a rule of law." Nicholas, cited above, at 37 Tul.L.Rev. 605, 635. Or as Planiol, cited above, noted, the reason the action for unjustified enrichment does not lie in such an instance "* * * is because the relations of the parties, being fixed by the contract or by the legal rule of responsibility, there is no need to make use of the concept of unjust enrichment. The person enriched has the right to keep the enrichment, and the measure in which he is held is determined by the application of other juridical rules. This subsidiary character of the action explains why the principle of unjust enrichment does not invade the entire law." Section 937A.
The rights of the parties in the instant case are governed by our Negotiable Instrument Law and the judicial interpretations of the law merchant, which the legislature has directed us to apply in the area regulated by such law, LSA-R.S. 7:195. The plaintiff Thompson therefore cannot recover on the basis of unjustified enrichment, since this principle does not apply if the rights of the parties are expressly regulated by other provisions of law.
Decree.
The trial court judgment therefore is affirmed at the cost of the plaintiff-appellant.
Affirmed.
NOTES
[1] We expressly note that we do not have before us the rights of a holder of the note who did not participate in the material alteration.
[2] However, since the payee Thompson had made or assented to the alteration, his liability to McMillan, the endorser, was not discharged. The trial court so held in a previous suit, the appeal in which was dismissed in this court. McMillan Feeder Finance Corp. v. Thompson, La. App. 3 Cir., 171 So.2d 827.
[3] LSA-C.C. Arts. 1964 and 1965 provide:

Article 1964: "Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources."
Article 1965: "The equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity." (Italics ours.)